## Assigned Estate of Michael Hamill.

*Assignment for creditors—Liability of assignee.*

An attachment execution having been issued, the garnishee by consent of the parties paid over the money to the plaintiff in the attachment who agreed to apply it in a manner specified by defendant, it being agreed that plaintiff should discontinue the attachment; the application specified proving impossible the defendant substituted other directions assented to by plaintiff. Some time later the defendant in the execution assigned to the plaintiff in the execution. *Held*, that the assignee was not bound to account for moneys received by him as the proceeds of the fund attached and applied in accordance with the agreement under which they were received.

Argued May 14, 1896. Appeal, No. 88, April T., 1896, by judgment creditors, from the judgment and decree of C. P. Mercer Co., March T., 1896, No. 9, sustaining exception of assignee to the auditor's report, surcharging the assignee. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Affirmed.

Exception to auditor's report in re assigned estate for benefit of creditors.

Michael Hamill made an assignment to R. S. Johnston for the benefit of creditors on January 4, 1894. From the report of the auditor it appeared that the said R. S. Johnston in his capacity as president of the First National Bank received the sum of $790.79 on the 29th of August, 1893, being money belonging to Hamill which had been attached on the part of the bank and which by consent of the parties had been voluntarily paid to said Johnston and applied by him to indebtedness of Hamill to the bank. The auditor surcharged the assignee with this amount and exceptions being filed by the assignee to such

surcharge the exceptions were sustained by the court below, MILLER, P. J.

The facts more fully appear from the opinion of the Superior Court.

*Errors assigned* were in sustaining the second exception of the report of the auditor, which exception was as follows:

"Second. The auditor erred in sustaining the first and second exceptions to the assignee's account and in surcharging the assignee, under said exceptions, with the amount of money received by the First National Bank of Greenville in Venango county."

*S. R. Mason* and *L. Kuder*, for appellant.—In the face of the evidence, we submit that it is absurd to argue that this money was not secured and paid on the attachment and to be applied as a credit on the judgment.

The principle stated by the learned judge is no doubt correct, that where a creditor has a lien on real estate and a levy on personal property, he may abandon his levy on the personalty and rely for his security on his lien against the real estate. But suppose, as in this case, he has made his money out of the personalty, then he must apply it as a credit on the judgment. There is no difference between an execution and an attachment in execution; they are both execution processes. One seizes and sells property, the other arrests the money of the debtor in the hands of third parties. The application of the money is the same.

The effect of an attachment execution, served wherever it lies, is to place the attaching creditor in the same relation to the garnishee as that occupied by the debtor before the attachment was laid: In re Baldwin's Estate, 4 Pa. 248.

The attachment is an equitable assignment of the thing attached, a substitution of the creditor for the debtor to the latter's rights against the garnishees: Reed v. Penrose Executors, 36 Pa. 229; Roig v. Tine, 103 Pa. 117.

The attaching creditor, therefore, in this case having secured $790.79 by virtue of his attachment, the garnishee having paid the money because of the attachment, we submit the same must be credited upon the judgment as of date of November 9, 1893, as directed by the learned auditor.

*Q. A. Gordon*, with him *Gillespie & Pettit*, for appellees.—
The money was received by the bank, according to the facts as
found by the court, as security for all the notes owing to it by
Hamill. There is no claim that these notes have all been paid,
or that this fund is sufficient to pay them, or even those for
which the bank holds no other security of any value whatever.
The application can be made at any time by the bank. The
appellant has no right to make it, and never had. If it is left
to the law to make it, the fund will be applied to the notes that
have no other security : Borland v. Murphy, 92 Pa. 91, and
cases there cited.

There is no pretense of any notice to the bank not to release
the money attached, or any warning to deal with its two secu-
rities so as to preserve or promote the security of the appel-
lant's judgment. Without such notice or warning, it is settled
beyond all question that the creditor having the lien upon the
two funds may safely release either and hold the other : Mc-
Ilvain v. Mutual Assurance Co., 93 Pa. 30 ; Snyder v. Craw-
ford, 98 Pa. 414. Constructive notice is not sufficient ; it must
be actual, and must precede the release.

OPINION BY REEDER, J., December 7, 1896 :

There is but one question raised by the assignment of error.
Hamill was indebted to the First National Bank of Greenville
for $5,000, which was secured by transfer, as collateral security,
of some whisky in a bonded warehouse (this indebtedness,
however, does not enter into our consideration of this case) ; for
a note for $2,000, to secure which he gave to R. S. Johnston,
president of the bank, a deed to a hotel property owned by him,
which, although absolute on its face, was actually given as col-
lateral security ; and for two notes, one of $300 and one of
$567.94, for which the bank held no security except a note of
one M. P. Kelly, for $350 not yet due at the time of the last
hearing before the auditor. Judgment was confessed by Hamill
on the $2,000 note in Crawford county, on August 28, 1893.
Prior to this, there had been a payment of $500 made upon the
$2,000 note, leaving a balance of $1,500 still due.

After the bank entered this judgment in Crawford county,
and on the same day, viz : August 28, 1893, on an exemplified
record, they entered judgment in Venango county and issued an

attachment execution, naming the International Bank of Franklin and C. W. Gearing as garnishees. This attachment was served on the day following the entry of the judgment.

The amount of money in the hands of the garnishees, belonging to Hamill, was $790.79. After the attachments had arrested the money in the possession of the garnishees, Hamill agreed with Johnston, the president of the bank, that he would give him an order on the International Bank to pay over the money in the International Bank, if he, Johnston would apply it to the Clift judgment, the first lien upon the hotel property, and would add to it an amount sufficient to pay the Clift judgment. Johnston agreed to this, and the money, $790.79, made up of a balance due Hamill of $190.79, and the proceeds of three notes, for $200 each, given to Hamill by Gearing was paid over by the bank to Johnston, he agreeing to save them harmless, discontinue the attachments, and pay the costs.

This payment was made November 9, 1893. Afterward, on December 4, 1893, Hamill made an assignment for the benefit of creditors to R. S. Johnston. At the time of the assignment, the $790.79 was not in the possession of Johnston as an individual, it having been paid over to him as the president of the bank, upon an agreement between the bank and Hamill that it should be used for the purpose of paying the Clift judgment. This they offered to do, but Mrs. Clift refused to accept the money and assign her judgment. Hamill then agreed that the money should be applied to any shortage there might be on any notes of his, due to the First National Bank.

These are the facts as they are found by the court below, and there is no finding by the auditor which is in opposition to it. This finding is moreover fully justified by the evidence.

Subsequently on June 6, 1894, it was agreed in writing by all the parties in interest, including this appellant, that Johnston should declare in writing a defeasance of the deed to the hotel property as assignee under an order of the court and " that after said property had been sold the proceeds thereof shall be first applied to the balance due upon a note of $2,000 for which said property was conveyed . . . . and the balance of the proceeds of the sale of said Hamill hotel property to go into the general fund for distribution among the creditors of the said Hamill according to priority of liens."

This was done, and the property was sold for $1,975. When the assignee filed his account, he deducted the balance due on the $2,000 note from the proceeds of the sale. The appellant claims that the $790.79 paid after the attachment executions had issued, ought to have been first credited on the balance due on the $2,000 note, and then the amount still due should have been deducted from the proceeds of the sale of the hotel property. He therefore seeks to have him surcharged with that amount.

This the court below refused to do, and this is the only question raised before us by this assignment of error.

If this money had been made upon the attachments, the position of the appellant would be incontrovertible. When this money was paid by the International Bank to the First National Bank, viz: November 9, 1893, no interrogatories had been filed, no judgment obtained. If the bank had discontinued all proceedings, as it had the right to do, no claim could have been made against the bank by any creditor because of its having done so. The learned auditor properly admits that the bank could have abandoned its attachment and permitted the parties named as garnishees to pay over this money to Hamill, without incurring any liability as to the other creditors; but he contends, as the bank did not do so, but only agreed to dissolve the attachments, without actually dissolving them prior to the payment of the money, and although the money was to be devoted to a specific purpose when paid to the bank, and was then paid only upon the order of the only parties in interest, the plaintiff and the defendant in the judgment, the garnishees having no interest, being mere stakeholders, the money must be regarded and treated as having been made upon the attachments in execution, and must be credited upon the judgment.

We agree with the learned court below, that this is an erroneous conclusion. Suppose the agreement between the Bank and Hamill had been carried out, and the money applied to the purchase of the Clift judgment, could Johnston, as assignee, have been surcharged with this money because he did not apply it to the bank judgment, on the application of creditors who had been injured by such payment? Yet if it was made upon the attachments, he would have been bound to apply it as a credit upon the bank judgment no matter what agreement he might

have made with Hamill. The attachments created a lien upon the funds, but when the money was paid over to the bank, in consequence of an agreement between Hamill and the bank that the attachments should be dissolved and the money appropriated to a specific use, it was an abandonment by the bank of their attachment just as much as if it had been entered of record. It was such an abandonment as any court would have enforced upon this statement of facts upon a petition to dissolve the attachments ; and when the money could not be used for the purpose agreed upon, Hamill had the power to direct that it should be appropriated by the bank to any purpose which he saw fit.

There is but one more question left for our consideration. The unsecured notes that the bank held against Hamill, to the payment of which they claim the right to appropriate this $790.79, amount to $867.94. As collateral security to these notes, they hold a note of M. P. Kelly for $350. If this note is paid, and the $790.79 plus the $350 exceed the amount due the bank from Hamill, the balance must be paid to Johnston as assignee and distributed by him. The fact however that the bank holds this Kelly note as collateral security to Hamill's note does not oblige, as the appellant seems to contend, the bank to credit Hamill with the amount of the Kelly note. They have the right to appropriate all the money in their hands to the payment of the Hamill notes, and, if that extinguishes Hamill's liability to the bank, the Kelly note, or its proceeds, must be turned over to Hamill's assignee.

The exceptions are dismissed, and the decree of the court below affirmed.