J-S58018-17

2017 PA Super 382

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| RASHAWN J. WILLIAMS, | |
| Appellant | No. 1692 MDA 2016 |

Appeal from the Judgment of Sentence May 5, 2016
In the Court of Common Pleas of Lycoming County
Criminal Division at No(s): CP-41-CR-0001412-2014

BEFORE:  GANTMAN, P.J., SHOGAN, J., and FORD ELLIOTT, P.J.E.

OPINION BY SHOGAN, J.:                    **FILED DECEMBER 08, 2017**

Appellant, Rashawn J. Williams, appeals from the judgment of sentence entered in the Court of Common Pleas of Lycoming County on May 5, 2016, following a six-day jury trial.  We affirm.

The trial court briefly summarized the facts of the crime and initial procedural history as follows:

> On June 1, 2014, Appellant Rashawn Williams shot and killed Aaron Lowry [("the victim")] outside the Lamplight Hookah Lounge on West Fourth Street in Williamsport[,] Pennsylvania[,] and then fled to High Point North Carolina.  On June 6, 2014, when law enforcement officers attempted to apprehend the Appellant in High Point, he fled from an apartment and was pursued into a wooded area by a law enforcement canine, which bit him and caused some injuries to his face and left ankle that were treated at a local hospital.  Appellant was extradited back to Pennsylvania and charged with homicide, [two counts of] aggravated assault, possession of a firearm without a license,

person not to possess a firearm, possession of an instrument of crime (firearm), simple assault, terroristic threats, and flight to avoid apprehension or prosecution.[1]

Pa.R.A.P. 1925(a) Opinion, 2/6/17, at 1.

On November 12, 2014, the Commonwealth sought, and was granted, access to the medical records from High Point Regional Hospital, where Appellant was treated following his capture on June 6, 2014. On November 25, 2014, Appellant filed a motion to quash the November 12 order, asserting that disclosure of the records violated the Health Insurance Portability and Accountability Act of 1996, Pub. L. 104-191, 110 Stat. 1936 (1996) ("HIPAA"). Appellant filed an *omnibus* pretrial motion on January 2, 2015, asserting, *inter alia*, that the medical records should be suppressed. On December 23, 2015, the trial court denied Appellant's motion to quash and suppression of the medical records.

The Commonwealth filed multiple motions *in limine* on March 7, 2016, March 18, 2016, and March 22, 2016, seeking to preclude, *inter alia*, the testimony of Dr. Eric Vey, a defense expert. Also on March 22, 2016, and on March 30, 2016, pursuant to Pa.R.E. 404(b), the Commonwealth filed a notice of intent to introduce evidence including certified records of Appellant's prison telephone calls. Appellant also filed multiple motions *in limine* on April 4, 2016, and April 7, 2016, along with a motion to introduce

---

[1] 18 Pa.C.S. §§ 2501, 2702(a)(1) and (4), 6106, 6105, 907(b), 2701(a)(3), 2706, and 5126, respectively.

certified police reports.  On April 7 and 8, 2016, the trial court ruled on the various motions *in limine* and notices of intent.   Order, 4/7/16; Order, 4/8/16.

A jury trial ensued on April 12-18, 2016, following which the jury convicted Appellant of all charges.  On April 21, 2016, Appellant filed a Post Verdict Motion for Extraordinary Relief pursuant to Pa.R.Crim.P. 704(B)(1),[2] which the trial court denied by opinion and order dated May 5, 2016, and filed on May 10, 2016.   Also on May 5, 2016, the trial court sentenced Appellant to life imprisonment without the possibility of parole, and a concurrent aggregate sentence of twelve to twenty-four years of

_____

[2]  Pa.R.Crim.P. 704 provides, in pertinent part:

Rule 704. Procedure at Time of Sentencing

\* \* \*

**(B) Oral Motion for Extraordinary Relief.**

(1) Under extraordinary circumstances, when the interests of justice require, the trial judge may, before sentencing, hear an oral motion in arrest of judgment, for a judgment of acquittal, or for a new trial.

(2) The judge shall decide a motion for extraordinary relief before imposing sentence, and shall not delay the sentencing proceeding in order to decide it.

(3) A motion for extraordinary relief shall have no effect on the preservation or waiver of issues for post-sentence consideration or appeal.

Pa.R.Crim.P. 704(B)(1–3).

incarceration.[3]  Appellant filed post-sentence motions on May 9, 2016, which the trial court denied on October 6, 2016.  Appellant filed a timely notice of appeal; both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following eight issues on appeal, which we have reordered for purposes of clarity and ease of disposition:

> I.  Was the evidence presented at trial insufficient to prove that the Appellant had the specific intent to kill as required to support the guilty verdict for murder of the first degree?
>
> II.  Was the evidence presented at trial insufficient to prove malice as required to convict the Appellant of third degree murder and aggravated assault?
>
> III.  Did the Commonwealth fail to disprove the Appellant's self-defense claim where undisputed evidence established that the victim and at least one other individual jumped the Appellant?
>
> IV.  Was the first degree murder conviction so contrary to the weight of the evidence as to shock the conscience of the court and require that the Appellant be given a new opportunity to proceed to trial and prevail?
>
> V.  Did the trial court abuse its discretion by refusing to instruct the jury on heat of passion voluntary manslaughter?
>
> VI.  Did the trial court abuse its discretion by failing to suppress the Appellant's medical records from North Carolina because the Commonwealth unlawfully obtained them?
>
> VII.  Did the trial court abuse its discretion by excluding evidence offered by the defense, including: precluding Dr. Vey's testimony that the victim could have folded a knife and put it in

---

[3]  The trial court originally described the aggregate sentence for the four concurrent counts as ten and one-half to twenty-one years of imprisonment. Order, 5/5/16.  On July 22, 2016, the trial court corrected the "patent and obvious error" of addition.  Order, 7/22/16.

his pocket; excluding evidence of the victim's prior conviction for aggravated assault with a deadly weapon; and excluding proffered testimony that it is not unusual for witnesses to be uncooperative?

VIII. Did the trial court err by admitting evidence offered by the Commonwealth, including: admitting the Appellant's intercepted telephone calls; admitting testimony that the Appellant's girlfriend phoned a friend to ask to borrow money; and admitting, in rebuttal, hearsay testimony that a witness had informed the Appellant's baby's mother when the victim died?

Appellant's Brief at 4.

We first address Appellant's arguments relating to the sufficiency of the evidence supporting the convictions for first-degree murder and aggravated assault, along with his claim of unrebutted self-defense.[4] Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. ***Commonwealth v. Sanchez***, 36 A.3d 24, 37 (Pa. 2011). In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. ***Commonwealth v. Von Evans***, 163 A.3d 980, 983 (Pa. Super. 2017). "[T]he facts and circumstances established by the Commonwealth need not

_____

[4] While Appellant makes reference to insufficient evidence supporting third-degree murder, we observe that he was not convicted of that crime. Thus, we make no further comment regarding third-degree murder.

preclude every possibility of innocence." ***Commonwealth v. Colon-Plaza***, 136 A.3d 521, 525–526 (Pa. Super. 2016) (quoting ***Commonwealth v. Robertson-Dewar***, 829 A.2d 1207, 1211 (Pa. Super. 2003)).  It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. ***Commonwealth v. Tejada***, 107 A.3d 788, 792–793 (Pa. Super. 2015). The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence.  ***Commonwealth v. Mucci***, 143 A.3d 399, 409 (Pa. Super. 2016).  Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.  ***Commonwealth v. Rogal***, 120 A.3d 994 (Pa. Super. 2015).

Appellant first asserts that the Commonwealth failed to present sufficient evidence that he possessed the specific intent to kill the victim.  In support, Appellant presents a summary of the evidence in a light most favorable to him, rather than the Commonwealth, the verdict winner, as required by our case law.  ***Von Evans***, 163 A.3d at 983.  Appellant's Brief at 9–13.  Appellant argues that because the victim, Aaron Lowry, approached Appellant from behind while Appellant was engaged in a verbal confrontation with Shariah[5] Worthy, the mother of Appellant's daughter, the victim clearly

---

[5]  Shariah's name is variously spelled in the record as Shariah and Sheriah.

was the aggressor. Appellant asserts that he merely reacted and therefore, did not have the specific intent to kill the victim. *Id*. at 11–12. Appellant further argues that there can be no inference of specific intent in this case based upon Appellant's use of a deadly weapon on a vital part of the victim's body due to "numerous factors [that] negate any permissible inference." *Id*. at 12.

We note initially that Appellant has failed to comply with our rules of appellate procedure. In three pages of asserted factual underpinnings to this argument, Appellant fails to make one reference to where in the record these facts are located. Appellant's Brief at 9–11. It is not this Court's responsibility to comb through the record seeking the factual underpinnings of Appellant's claim. ***Commonwealth v. Samuel***, 102 A.3d 1001, 1005 (Pa. Super. 2014) (citing ***Commonwealth v. Mulholland***, 702 A.2d 1027, 1034 n.5 (Pa. Super. 1997)). ***See*** Pa.R.A.P. 2119(c) ("If reference is made to . . . any . . . matter appearing in the record, the argument must set forth . . . a reference to the place in the record where the matter referred to appears."). ***See also Commonwealth v. Harris,*** 979 A.2d 387, 393 (Pa. Super. 2009) ("When an allegation is unsupported by any citation to the record, such that this Court is prevented from assessing this issue and determining whether error exists, the allegation is waived for purposes of appeal. Pa.R.A.P. 2119(c)"); ***Commonwealth v. Einhorn***, 911 A.2d 960, 970 (Pa. Super.2006) ("An appellate brief must provide citations to the

record"). Nevertheless, we endeavor to locate support for Appellant's claims.

An individual commits first-degree murder when he intentionally kills another human being; an intentional killing is defined as a "willful, deliberate and premeditated killing." 18 Pa.C.S. §§ 2501, 2502(a), (d). To sustain a conviction for first-degree murder, the Commonwealth must prove that: (1) a human being was unlawfully killed; (2) the accused was responsible for the killing; and (3) the accused acted with malice and a specific intent to kill. **Commonwealth v. Ballard**, 80 A.3d 380, 390 (Pa. 2013). A jury may infer the intent to kill "based on the accused's use of a deadly weapon on a vital part of the victim's body." **Sanchez**, 36 A.3d at 37.

In addressing the sufficiency of the evidence supporting the first-degree murder verdict, the trial court stated as follows:

> The evidence presented clearly established that Appellant possessed a firearm, which he was not licensed to carry concealed on his person. In fact, Appellant was prohibited from possessing a firearm due to a prior conviction for robbery. Appellant, according to his own testimony, took the firearm out of his pocket, pointed it at the victim and fired it. N.T., April 15, 2016, at 59-60.
>
> The victim suffered a gunshot wound to the chest. N.T., April 12, 2016, at 86. The bullet was fired from at least 18 inches away. *Id* at 96. The bullet injured the victim's upper and lower lobes of the left lung, which is a vital organ, as well as the victim's sternum, ribs, and the pericardium or sack surrounding the victim's heart. *Id* at 89, 91. Those injuries led to bleeding which eventually led to a lack of oxygen to the brain and the heart. *Id*. at 91-92.

Since the evidence clearly established that Appellant used a firearm on a vital organ of the victim's body, the evidence was sufficient to establish specific intent to kill necessary for first degree murder. Furthermore, Appellant's possession and use of a firearm for which he had no license to carry is additional evidence of his intention to commit the crime. 18 Pa.C.S. § 6104.

Pa.R.A.P. 1925(a) Opinion, 2/6/17, at 22.

The testimony at trial established that Archie Bell and the victim exited Lamplight Hookah Lounge and observed Appellant engaged in an altercation with Shariah Worthy, a woman Mr. Bell had danced with earlier that evening and who was the mother of Appellant's child. N.T., 4/12/16, at 29–47. Mr. Bell described Ms. Worthy as having a "terrified" look on her face as she backed away from Appellant. *Id*. at 29. Mr. Bell and the victim ran in the direction of Appellant; Mr. Bell was behind the victim and was close enough that he "could have rested [his] hand on" the victim's shoulder. *Id*. at 33. When they were within an "arm's length" of Appellant, Appellant shot the victim. *Id*. at 32. Mr. Bell testified that Appellant "put the gun in my face, told me to back up or he would give me one, too." *Id*. At that point, Appellant fled in a car that was parked around the corner, and the victim, bleeding from his nose and mouth, collapsed on the pavement as he tried to escape. *Id*. at 34–35.

The evidence amply proved that Appellant was responsible for killing the victim. Appellant's use of the gun on the victim allowed the jury to infer the specific intent to kill necessary for a finding of first-degree murder.

Appellant's claim that the inference in this case was improper because "he did not aim the gun at a specific area of the victim's body," is specious. Appellant's Brief at 12. In *Commonwealth v. Washington*, 927 A.2d 586 (Pa. 2007), the appellant argued that there was insufficient evidence to sustain a conviction of first-degree murder because he merely aimed in the victim's direction, which could not "rationally support an inference that he had the specific intent to kill; rather, the evidence is equally consistent with the probability that [he] sought only to scare or wound" the victim. *Id*. at 607. The High Court found that the appellant's claim had no merit. It specifically rejected the proposition that it had to conclude a defendant intentionally aimed at a vital part of the victim's body before it could find sufficient evidence to support an inference of the specific intent to kill. *Id*. Rather, our Supreme Court held that "the critical inquiry is the **use** of a deadly weapon on a vital part of the body, not the intentional aiming of the weapon at a vital part of the body." *Id*. (emphasis in original) (internal quotations and citations omitted). This issue lacks merit.

Next, we address Appellant's claim that there is insufficient evidence in the record showing that Appellant acted with the necessary malice for aggravated assault. Appellant's Brief at 23. Appellant fails to adequately develop this contention, asserting only that "[d]espite permissible inferences from use of a deadly weapon to a vital organ and unlawful possession of a firearm, as argued in his first argument disputing sufficiency for specific

- 10 -

intent, the Appellant avers the evidence failed to show that he had the requisite malice as required for . . . aggravated assault." Appellant's Brief at 23–24. While he cites to case law defining and describing malice, Appellant wholly fails to substantiate his claim with citation to relevant cases or develop his contention. This failure to adequately develop and support his issue results in waiver. *See Commonwealth v. Woodard*, 129 A.3d 480, 509 (Pa. 2015) (quoting *Wirth v. Commonwealth*, 95 A.3d 822, 837 (Pa. 2013), which stated that "where an appellate brief fails to . . . develop an issue in any other meaningful fashion capable of review, that claim is waived. It is not the obligation of an appellate court to formulate [the] appellant's arguments for him.") (internal quotations omitted)).

Even if not waived, we would reject the claim, as did the trial court. Opinion and Order,[6] 10/11/16, at 14. Aggravated assault is defined as follows:

**§ 2702. Aggravated assault**

**(a) Offense defined.**—A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;

---

[6] The October 1, 2016 order disposed of Appellant's post-sentence motion, filed May 9, 2016, and argued in the trial court on August 29, 2016.

- 11 -

18 Pa.C.S. § 2702. Malice is a crucial element of aggravated assault and is established when there is a "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty . . . ." *Commonwealth v. McClendon*, 874 A.2d 1223, 1229 (Pa. Super. 2005). In the absence of any specific argument, we would rely on the premise that a jury may infer malice "based on the defendant's use of a deadly weapon on a vital part of the victim's body." *Commonwealth v. Hitcho*, 123 A.3d 731, 746 (Pa. 2015) (citing *Commonwealth v. Arrington*, 86 A.3d 831, 840 (Pa. 2014)).

We next address Appellant's claim that the Commonwealth failed to disprove he acted in self-defense. Appellant's Brief at 18. He suggests that the uncontested evidence established that he did not provoke the use of force. *Id*. Appellant acknowledges that he had a duty to retreat but asserts that he did not have the ability to do so. *Id*. at 18–19. Once again, Appellant liberally refers to testimony at trial without supporting reference to the notes of testimony. *Id*. at 18–19.

A claim of self-defense requires evidence establishing the following three elements:

> "(a) that the defendant reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm; (b) that the defendant was free from fault in provoking the difficulty which culminated in the slaying; and (c) that the defendant did not violate any duty to retreat." *Commonwealth v. Samuel*, 527 Pa. 298, 590 A.2d 1245, 1247–48 (1991). *See also Commonwealth v. Harris*, 550 Pa. 92, 703 A.2d 441, 449

- 12 -

(1997); 18 Pa.C.S. § 505.2. Although the defendant has no burden to prove self-defense, . . . before the defense is properly in issue, "there must be some evidence, from whatever source, to justify such a finding." Once the question is properly raised, "the burden is upon the Commonwealth to prove beyond a reasonable doubt that the defendant was not acting in self-defense." *Commonwealth v. Black*, 474 Pa. 47, 376 A.2d 627, 630 (1977). The Commonwealth sustains that burden of negation "if it proves any of the following: that the slayer was not free from fault in provoking or continuing the difficulty which resulted in the slaying; that the slayer did not reasonably believe that he was in imminent danger of death or great bodily harm, and that it was necessary to kill in order to save himself therefrom; or that the slayer violated a duty to retreat or avoid the danger." *Commonwealth v. Burns*, 490 Pa. 352, 416 A.2d 506, 507 (1980).

*Commonwealth v. Mouzon*, 53 A.3d 738, 740-741 (Pa. 2012).

The Pennsylvania Crimes Code governs self-defense and provides, in relevant part, as follows:

**§ 505. Use of force in self-protection**

**(a) Use of force justifiable for protection of the person.—** The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

**(b) Limitations on justifying necessity for use of force.—**

* * *

(2) The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:

(i) the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or

- 13 -

(ii)  the actor knows that he can avoid the necessity of using such force with complete safety by retreating. . . .

* * *

(2.3) An actor who is not engaged in a criminal activity, who is not in illegal possession of a firearm and who is attacked in any place where the actor would have a duty to retreat under paragraph (2)(ii) has no duty to retreat and has the right to stand his ground and use force, including deadly force, if:

(i) the actor has a right to be in the place where he was attacked;

(ii) the actor believes it is immediately necessary to do so to protect himself against death, serious bodily injury, kidnapping or sexual intercourse by force or threat; and

(iii) the person against whom the force is used displays or otherwise uses:

(A) a firearm or replica of a firearm as defined in 42 Pa.C.S. § 9712 (relating to sentences for offenses committed with firearms); or

(B) any other weapon readily or apparently capable of lethal use.

18 Pa.C.S. § 505(a)–(b); **Commonwealth v. Smith**, 97 A.3d 782, 786 (Pa. Super. 2014).

We rely on the trial court's rejection of this claim:

Appellant avers the Commonwealth failed to disprove self-defense beyond a reasonable doubt where all uncontested evidence established that the victim and at least one friend jumped Appellant.  The evidence was not uncontested.  The Commonwealth presented evidence that although the victim

- 14 -

approached Appellant neither the victim nor his friend punched Appellant or jumped him. Archie Bell testified that neither he nor the victim punched Appellant and [no] one else was with them at the time. N.T., April 12, 2016, at 36-37. Christofer Snyder testified that he saw Appellant, his baby's mother (Shariah Worthy), and two Indian/Native American-looking men (the victim and Archie Bell) discussing something loudly or having an irritable moment. N.T., April 12, 2016, at 104-105, 118. They were just at the end of the building talking. *Id*. at 116. He didn't see the two men running down the street toward the end of the building. *Id*. He didn't see any altercation; he heard noises and he heard them talking loudly. *Id*. at 119. He also didn't see the shooting but he heard what he initially thought was a firecracker and then he saw the girl running across the street saying "he's got a gun." *Id*. at 107, 110.

Even assuming for the sake of argument that the evidence was uncontested that the victim and/or one of his friends threw the first punch or "jumped" Appellant, the evidence was not uncontested with respect to the victim or any of his friends displaying a knife. In other words, even if the evidence had been uncontested that Appellant would have been justified in using non-deadly force, it was not uncontested that Appellant was justified in using deadly force.

Appellant was not entitled to stand his ground and use deadly force in this case, because he illegally possessed the firearm.

* * *

Appellant admitted in his own testimony that he possessed the gun in his pocket, he had convictions for robbery and criminal trespass, and he had the firearm illegally concealed on his person. N.T., April 15, 2016, at 49, 59, 106. Moreover, Pennsylvania law prohibits individuals with robbery convictions from possessing firearms. 18 Pa.C.S. § 6105. Since Appellant clearly was in illegal possession of the firearm, he could not stand his ground and use deadly force.

Appellant's illegal possession of the firearm meant he had a duty to retreat if he could safely do so. See 18 Pa.C.S. § 505(b)(2)(ii). Archie Bell testified that there was nothing blocking Appellant from running down the sidewalk. N.T., April

- 15 -

12, 2016, at 37. Although defense witness Rashawn Ruley testified that three guys jumped on Appellant's back "like attacking him," when asked when in relation to the fighting that the gunshot went off, Ruley replied "Like probably, like I would say probably after—after the altercation, after he got hisself (sic) together or something because it was three guys and it was just him." N.T., April 14, 2016, at 148. Therefore, Appellant was not entitled to use deadly force, instead, he had a duty to retreat.

Furthermore, the evidence viewed in the light most favorable to the Commonwealth established that the victim did not display or otherwise use the knife. Archie Bell testified that the victim did not have anything in his hands. N.T., April 12, 2016, at 32-33. The knife was found in the victim's pocket as opposed to on the sidewalk or in the victim's hands. The Commonwealth also presented evidence that the victim's blood on the knife was a transfer stain from the victim's blood seeping through the pocket of his jeans shorts onto the knife.

Additionally, the testimony from the defense witnesses that the victim displayed a knife was not persuasive. Appellant repeatedly talked about his case in recorded telephone conversations with his girlfriend, friends, and family. Appellant's stories about the incident constantly changed. Initially he claimed he was not even present at the scene that night. Later, he claimed that he did not have a gun; the victim or one of his friends did. At no point in these conversations, however, did Appellant claim that the victim had a knife.

Rashawn Ruley also testified that the victim had a sharp object in his right hand, but that was after Mr. Ruley heard a shot and Appellant, who he knew as "Dewboy," walked past him. Mr. Ruley heard the victim's friends say call the cops because the victim just got shot[,] and then the victim collapsed. N.T., April 14, 2016, at 138-139. This testimony puts the knife in the victim's hands after Appellant shot him.

Finally, the jury could have inferred from the evidence presented that Appellant concocted his story about the victim displaying a knife after his girlfriend read Pennsylvania's self-defense law to him in one of the phone conversations. Appellant

- 16 -

never mentioned the knife in his phone conversations; the first time he mentioned the victim wielding a knife was in his trial testimony. His witnesses, Rashawn[7] Ruley and Rasheem Johnson, were his friends or acquaintances who did not come forward and provide the information to the police, were drunk or had been drinking that night, were not willing to be interviewed and were incarcerated with Appellant for periods of time during the pendency of this case.

When all of the evidence presented at trial is viewed in the light most favorable to the Commonwealth as the verdict winner, it was sufficient to disprove Appellant's self-defense claim beyond a reasonable doubt.

* * *

Simply put, the jury's verdict was not based solely on presumptions and consciousness of guilt. It was based on ample evidence that Appellant shot the victim in the chest, the bullet struck his left lung, and the victim died as a result. Appellant's own testimony established that he pulled a firearm out of his pocket, *pointed it at the victim who was only a few feet away from him, and fired it*. The verdict was also based on evidence, such as the fact that the knife was found in the victim's pocket and testimony from the Commonwealth's witnesses that the victim did not have a knife in his hand, which showed that Appellant was not confronting deadly force but, at most, a punch with a closed fist.

Pa.R.A.P. 1925(a) Opinion, 2/6/17, at 23, 27–28 (emphasis in original).

Accordingly, we agree.

Appellant also assails the weight of the evidence. Appellant's Brief at 14. We have held that "[a] motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is

_____

[7] Rashawn's name is variously spelled in the record as Rashaun and Rashawn.

sufficient evidence to sustain the verdict." ***Commonwealth v. Rayner***, 153

A.3d 1049, 1054 (Pa. Super. 2016) (quoting ***Commonwealth v. Widmer***,

744 A.2d 745, 751 (Pa. 2000)).   Our Supreme Court has described the

standard applied to a weight-of-the-evidence claim as follows:

> The decision to grant or deny a motion for a new trial based upon a claim that the verdict is against the weight of the evidence is within the sound discretion of the trial court.  Thus, "the function of an appellate court on appeal is to review the trial court's exercise of discretion based upon a review of the record, rather than to consider *de novo* the underlying question of the weight of the evidence."  An appellate court may not overturn the trial court's decision unless the trial court "palpably abused its discretion in ruling on the weight claim."   Further, in reviewing a challenge to the weight of the evidence, a verdict will be overturned only if it is "so contrary to the evidence as to shock one's sense of justice."

***Commonwealth v. Cash***, 137 A.3d 1262, 1270 (Pa. 2016) (internal

citations omitted).   A trial court's determination that a verdict was not

against the interest of justice is "[o]ne of the least assailable reasons" for

denying a new trial.  ***Commonwealth v. Colon-Plaza***, 136 A.3d 521, 529

(Pa. Super. 2016) (quoting ***Commonwealth v. Clay***, 64 A.3d 1049, 1055

(Pa. 2013)).   A verdict is against the weight of the evidence where "certain

facts are so clearly of greater weight that to ignore them or to give them

equal weight with all the facts is to deny justice."   ***Commonwealth v.***

***Lyons***, 833 A.2d 245, 258 (Pa. Super. 2003) (quoting ***Widmer***, 744 A.2d at

751–752)).   "[W]e do not reach the underlying question of whether the

verdict was, in fact, against the weight of the evidence. . . .   Instead, this

Court determines whether the trial court abused its discretion in reaching

whatever decision it made on the motion[.]" ***Commonwealth v. Ferguson***, 107 A.3d 206, 213 (Pa. Super. 2015) (citation omitted).

A challenge to the weight of the evidence must first be raised at the trial level "(1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion." ***Commonwealth v. Akrie***, 159 A.3d 982, 989 (Pa. Super. 2017). Appellant properly preserved his weight of the evidence claim by raising the issue in his post-sentence motions filed on May 9, 2016.

> Appellant underscores the trial court's statement that:
>
> [a]lthough the court might have arrived at a different conclusion than the jury with respect to the premeditation and deliberation and/or the specific intent to kill necessary for a first degree murder conviction because the victim was the initial aggressor and Appellant did not have any prior history with them, the jury's verdict did not shock the court's conscience.

Appellant's Brief at 14–15 (citing Pa.R.A.P. 1925(a) Opinion, 2/6/17, at 21). We note, however, that the trial court, and indeed Appellant himself, acknowledge that a new trial should not be granted merely because the judge on the same facts would have arrived at a different conclusion. ***Clay***, 64 A.3d at 1055 (citing ***Widmer***, 744 A.2d at 752).

Appellant also contends that the testimony of Robert Eigenbrod that Mr. Bell and a third individual "actually jumped" Appellant "is more credible" than the testimony of Mr. Bell. Appellant's Brief at 15. Once again, Appellant fails to cite to the record where this testimony is located. Moreover, the credibility of witnesses is a matter for the fact-finder, here the

jury, which was free to believe all, part, or none of the evidence. ***Commonwealth v. Cousar***, 928 A.2d 1025, 1033 (Pa. 2007). The trial judge, who viewed the witnesses' demeanors at trial, determined that the verdict did not shock its sense of justice. We ascertain no abuse of discretion in this determination.

In rejecting Appellant's claim that the verdict was against the weight of the evidence, the trial court stated:

> Although the court might have arrived at a different conclusion than the jury with respect to the premeditation and deliberation and/or the specific intent to kill necessary for a first degree murder conviction because the victim was the initial aggressor and the Defendant did not have any prior history with him, the jury's verdict did not shock the court's conscience. The standard is not whether the court would reach the same conclusion as the jury, but rather whether the jury's verdict made Justice totter on her pedestal or took the court's breath away. It did not. [Appellant's] claims regarding the victim brandishing a knife or saying that he was going to kill [Appellant] came across as concocted, especially in light of the statements [Appellant] made in his phone conversations with his girlfriend, friends, and relatives in which [Appellant] asserted that he was not even there and he did not possess a gun (which he admitted at trial were untrue) and the fact that in these phone conversations [Appellant] never mentioned the victim having a knife in his hand. Therefore, the court was not at all surprised that the jury rejected [Appellant's] claim that he was justified in using deadly force in this case. Furthermore, the jury could, and apparently did, infer that [Appellant] had the specific intent to kill from his use of deadly weapon on a vital part of the victim's body.

Trial Court Opinion (Post-Sentence Motions), 10/11/17, at 12–13. The trial court did not err in concluding that the verdict was not against the weight of the evidence.

Appellant next contends that the trial court abused its discretion by refusing to instruct the jury on heat-of-passion voluntary manslaughter. Appellant's Brief at 20. Our Supreme Court has described the heat-of-passion defense:

> A heat of passion defense is a partial defense that addresses the element of intent and, if successfully argued, mitigates first-degree murder to third-degree murder. *See **Commonwealth v. Hutchinson***, 611 Pa. 280, 25 A.3d 277, 314 (2011). It seeks to show that the defendant is guilty of voluntary manslaughter, not murder, by proving that at the time of the killing he or she was acting under a sudden and intense passion resulting from serious provocation by the victim. *See* 18 Pa.C.S. § 2503(a) ("a person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by . . . the individual killed.").
>
> In order to successfully argue heat of passion, a defendant must prove (1) provocation on the part of the victim, (2) that a reasonable man who was confronted with the provoking events would become "impassioned to the extent that his mind was incapable of cool reflection," and (3) that the defendant did not have sufficient cooling off time between the provocation and the killing. ***See Commonwealth v. Busanet***, 618 Pa. 1, 34–35, 54 A.3d 35, 55 (2012) (holding no evidence of provocation where the victim's threats against Appellant were made weeks prior to the shooting, thereby affording Appellant sufficient time to engage in cool reflection); [***Commonwealth v.***] ***Martin***, 607 Pa. at 186, 5 A.3d [177] at 189 [(Pa. 2010)] ("In determining whether there was sufficient provocation to create uncontrollable passion in a reasonable person, we determine whether the killer actually acted in the heat of passion, whether the provocation lead directly to the slaying of the person responsible for the provocation, and whether the killer had sufficient cooling off time."); ***Commonwealth v. Williams***, 602 Pa. 360, 391 n. 30, 980 A.2d 510, 529 n. 30 (2009) (a violent confrontation occurring two days before the murder would not serve to reduce the degree of guilt to manslaughter, since killings do not occur under the heat of passion where there was sufficient time for cooling between whatever provocation might have existed and

the actual killings). Further, "if any element is missing, the provocation defense fails." ***Martin***, ***supra***. ***See also Commonwealth v. Sanchez***, 623 Pa. 253, 314, 82 A.3d 943, 980 (2013) ("If any of these be wanting—if there be provocation without passion, or passion without a sufficient cause of provocation, or there be time to cool, and reason has resumed its sway, the killing will be murder.").

***Commonwealth v. Mason***, 130 A.3d 601, 627–628 (Pa. 2015).

Appellant asserts that the trial court's acknowledgement that the victim was the "initial aggressor," coupled with testimony of other witnesses, established provocation by the victim. ***Id***. at 22. In addition, he suggests that because there was no cooling off period, he acted under "sudden and intense passion." ***Id***. at 21–22. Appellant asserts that his testimony supported "terror" on his part. ***Id***. Finally, he suggests the testimony of Rashawn Ruley established "sufficient provocation by the victim." ***Id***. Appellant wholly fails to identify where in the record this "support" is located. ***Id***. at 21–22. Pa.R.A.P. 2119 (c) (If reference is made to any matter appearing in the record, "the argument must set forth, in immediate connection therewith, or in a footnote thereto, a reference to the place in the record where the matter referred to appears.") (citation omitted).

In reviewing a jury charge, we determine "whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case." ***Commonwealth v. Brown***, 911 A.2d 576, 582–583 (Pa. Super. 2006). We must view the charge as a whole; the trial court is free to use its own form of expression in creating the charge.

***Commonwealth v. Roane***, 142 A.3d 79, 95 (Pa. Super. 2016). "A trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration." ***Id***. Moreover, it is well-settled that "the trial court has wide discretion in fashioning jury instructions. The trial court is not required to give every charge that is requested by the parties[,] and its refusal to give a requested charge does not require reversal unless the appellant was prejudiced by that refusal." ***Commonwealth v. Scott***, 73 A.3d 599, 602 (Pa. Super. 2013) (quoting ***Brown***, 911 A.2d at 583).

The trial court analyzed this claim as follows:

> This case was purely a self-defense claim. The defense did not present any evidence that Appellant acted out of any kind of sudden rage, terror, resentment or any other passion or emotion.
>
> Appellant testified that the victim and one or two others attacked him from behind. He was being punched in the head, grabbed by the neck and collar of his shirt, and "rag-dolled." He was trying to block punches when he heard something to the effect of I'm going to kill you and he saw the guy going in his pocket. He thought the guy was going for a gun, so Appellant had to get his arm loose so he could get the gun he had in his right pocket. As Appellant was trying to reach his gun, he saw a knife in the hands of the guy who said he was going to kill him. Appellant pulled out his gun, pointed it in the guy's direction and fired. Once the gun was fired, everybody kind of stopped. Appellant pointed the gun and told all three guys to back up. Appellant then walked to his car and drove away. N.T., April 15, 2016, at 57-62.
>
> Since there was no evidence that Appellant was overcome by a sudden and intense passion, a heat of passion jury instruction was not appropriate in this case. ***Commonwealth v.***

> ***Taylor***, 876 A.2d 916, 925 (Pa. 2005) ("It is settled that a trial court should not instruct the jury on legal principles which have no application to the facts presented at trial. Rather, there must be some relationship between the evidence presented and the law upon which an instruction is requested."). Therefore, the court did not err in failing to give such an instruction.

Pa.R.A.P. 1925(a) Opinion, 2/6/17, at 19–20; Trial Court Opinion (Post-Sentence Motions), 10/11/17, at 11.

We have reviewed the notes of testimony, in particular, Appellant's testimony and that of Rashawn Ruley. N.T., 4/15/16, at 48–158; N.T., 4/14/16, at 136–159. Appellant's evidence supports the trial court's characterization of this case as "purely a self-defense claim." Pa.R.A.P. 1925(a) Opinion, 2/6/17, at 19. We have located no evidence that Appellant acted out of a sudden rage, terror, resentment, or any other passion or emotion, nor has Appellant identified any such testimony. This issue lacks merit.

Appellant's sixth issue avers that the trial court abused its discretion by failing to suppress Appellant's North Carolina medical records. Appellant's Brief at 25.

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.
>
> We may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record

> supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.
>
> **Commonwealth v. Williams**, 2008 PA Super 6, 941 A.2d 14, 26–27 (Pa. Super. 2008) (*en banc*) (citations, quotations, and quotation marks omitted). Moreover, it is within the lower court's province to pass on the credibility of witnesses and determine the weight to be given to their testimony. **See Commonwealth v. Clemens**, 2013 PA Super 85, 66 A.3d 373, 378 (Pa. Super. 2013).

**Commonwealth v. McCoy**, 154 A.3d 813, 815–816 (Pa. Super. 2017) (quoting **Commonwealth v. Roberts**, 133 A.3d 759, 771 (Pa. Super. 2016), *appeal denied*, 145 A.3d 725 (Pa. 2016)). "Furthermore, our Supreme Court in **In the Interest of L.J.**, 622 Pa. 126, 79 A.3d 1073, 1085 (2013), clarified that the scope of review of orders granting or denying motions to suppress is limited to the evidence presented at the suppression hearing." **McCoy**, 154 A.3d at 816.

The trial court explained the procedural history regarding the Commonwealth's efforts to obtain the medical records in this manner:

> On October 6, 2014, the attorney for the Commonwealth sent a subpoena to the Hospital requesting [Appellant's] medical records for the dates 6/4/2014-6/8/2014. The subpoena also noted that [Appellant] was a fugitive wanted for homicide charges in Lycoming County, Pennsylvania, and he was arrested by U.S. Marshals in High Point and brought to the [High Point Regional UNC Health Care ("Hospital")] for treatment. After receiving the subpoena, the attorney for the Hospital spoke with the attorney for the Commonwealth by telephone and outlined the procedure that the Commonwealth needed to follow before the records would be released. Based on that telephone conversation, the Commonwealth presented President Judge Nancy Butts with a petition for a certificate directing an out-of-

state witness to produce medical records, as well as a praecipe. Judge Butts signed the certificate, which requested that a North Carolina judge compel the record's custodian to release certified medical records to the Lycoming County District Attorney's Office. A judge in Guilford County, North Carolina[,] issued an order directing the record's custodian to deliver [Appellant's] medical records to the Lycoming County District Attorney's office. The subpoena, petition, praecipe, certificate and court order are attached to the Commonwealth's brief as exhibits.

When [Appellant's] counsel was notified that the Commonwealth had obtained an order for the release of [Appellant's] medical records, counsel filed a motion to quash. The motion not only requested suppression of the medical records but also that the records be sealed until the court could determine whether the Commonwealth properly obtained them. Judge Butts directed the Commonwealth to turn the records over to the court, which . . . held them pending resolution of the motion.

Trial Court Opinion (Suppression), 12/23/15, at 1–2.

Appellant contends that the Commonwealth violated HIPPA, maintaining that the medical records from High Point Medical Center are protected health information. *Id*. Appellant references 45 C.F.R. § 160.103 as the definition for his use of the phrase "health information," and it appears that he refers to a compilation of the definitions of "Health information," and "Protected health information," as set forth in 45 C.F.R. 160.103. Appellant's Brief at 25. Appellant's references are conclusory and undeveloped. *Id*.

Appellant also suggests the Commonwealth's request for the records failed to comply with HIPAA, asserting that its request made "only a bald assertion that the information [was] material and necessary to preparation

of the Commonwealth's homicide case against the Appellant." Appellant's Brief at 25. Appellant wholly fails to identify or explain with what aspect of the "regulations" the Commonwealth failed to comply. *Id*. Appellant alleges what the "proper procedure would have been" without citing to any support for his conclusion. *Id*. at 26.

Appellant maintains that the Commonwealth's reliance on the procedure outlined by counsel for High Point Regional Medical Center, as set forth in 42 Pa.C.S. § 5964 of the Uniform Act to Secure the Attendance of Witnesses from Within or Without a State in Criminal Proceedings, was incorrect because that section applies only to secure attendance of a witness, not to obtain documents. Appellant's Brief at 26–27. He submits that he has located no case on point. *Id*. at 27. In essence, he contends he was entitled to notice and an opportunity to be heard before the records were released to the Commonwealth. *Id*. at 27–28. Appellant avers that "the only remedy, in light of the sequence of events in this matter, was to preclude the Commonwealth from using the records." *Id*. at 29.

We find no merit to Appellant's claim, and rely on the trial court's thorough and insightful analysis in rejecting this issue:

> [Appellant] contends he was entitled to notice and an opportunity to be heard prior to the Commonwealth receiving his medical records pursuant to 45 C.F.R. § 164.512(e). The court cannot agree.
>
> First, the Commonwealth cannot violate HIPAA. Although [Appellant's] medical records meet the definition of "health information," the Commonwealth is not a "covered entity." The

term covered entity is: (1) a health plan; (2) a health care clearinghouse; or (3) a health care provider who transmits any health information in electronic form in connection with a transaction covered by this subchapter. 45 C.F.R. § 160.103. A district attorney's office is not a covered entity. *State v. Downs*, 923 So.2d 726, 731 (La.App.1 Cir. 2010).

Second, the notice provisions in section 164.512(e)(2)(ii) do not apply in this case. The Hospital did not disclose [Appellant's] medical records until after it received an order of court. The notice provisions of section 164.512(e)(2)(ii) only apply if the covered entity responds "to a subpoena, discovery request, or other lawful process, **that is not accompanied by an order of a court** or administrative tribunal." 45 C.F.R § 164.512(e)(2)(ii) (emphasis added).

Instead, the court finds that the applicable provisions are the ones related to disclosure for law enforcement purposes contained in section 164.512(f), which states in relevant part:

A covered entity may disclose protected health information for a law enforcement purpose to a law enforcement official if the conditions in paragraphs (f)(1) through (f)(6) of this section are met, as applicable.

(1) Permitted disclosures: Pursuant to process and as otherwise required by law. A covered entity may disclose protected health information:

[* * *]

(ii) In compliance with and as limited by the relevant requirements of:

(A) A court order or court-ordered warrant, or a subpoena or summons issued by a judicial officer[.]

45 C.F.R. § 164.512(f)(1)(ii)(A).

The definition of law enforcement official includes county prosecutors and assistant district attorneys. 45 C.F.R. §164.103

("Law enforcement official means an officer or employee of any agency or authority of . . . a political subdivision of a State or territory . . . who is empowered to . . . prosecute or otherwise conduct a criminal, civil, or administrative proceeding arising from an alleged violation of law."). There is no notice requirement under this law enforcement exception. *See United States v. Elliott*, 676 F.Supp.2d 431, 438 (D. Md. 2009)(the judicial and administrative proceedings exception (45 C.F.R. § 164.512(e)) does require that in certain circumstances that notice be provided to the person whose records are being sought; the law enforcement exception contains no such requirement). Moreover, the Commonwealth complied with the requirements of this section; it obtained a court order for release of the records and the paperwork that resulted in the issuance of the order limited the records sought to those related to the injuries [Appellant] sustained when he was apprehended between June 4 and June 8, 2014.

The court also rejects [Appellant's] allegation that the Commonwealth was on a fishing expedition. [Appellant] was charged with criminal homicide, flight to avoid apprehension, and other related offenses. He fled to High Point, North Carolina, where he was apprehended by authorities and treated at the Hospital. [Appellant's] flight and conduct during his apprehension is clearly relevant to the charge of flight to avoid apprehension, trial or punishment. It also is relevant and admissible to show [Appellant's] consciousness of guilt for criminal homicide and the other related charges.

During his flight and apprehension, [Appellant] sustained injuries. It was reasonable for the Commonwealth to expect the records to contain information to support its contention that [Appellant] fled from the authorities and that such flight evinced consciousness of guilt. The injuries themselves and the manner in which they were sustained could support its contentions. Moreover, medical personnel typically take a history and ask a patient how he sustained his injuries. Statements made for purposes of medical diagnoses and treatment and statements of an opposing party are recognized exceptions to the hearsay rule. Pa.R.E. 803 (4) and (25). Therefore, it was reasonable for the Commonwealth to expect that evidence relevant to the charges in this case would be in [Appellant's] medical records. In fact, there are multiple references to dog bites to the patient's face and left ankle, and a nurse's note indicates that the patient was

brought in by the High Point Police Department (HPPD) for a dog bite by a police dog. More importantly, however, there is a chart which, in addition to the information that was contained in the nurse's note, indicates that [Appellant] stated "he was hiding in the bushes when he was bitten by the dog and has a lot of scrapes to the face and body from that."

Generally for medical records or any other business record to be admissible at trial, the records custodian must testify or certify the authenticity of the records. Pa.R.E. 901; Pa.R.E. 902(11). Therefore, as stated in the certificate signed by Judge Butts, the Hospital's records custodian, Karen Gammons, was a necessary and material witness in the reproduction of the certified medical records.

Finally, even if there was a violation of HIPAA, [Appellant] would not be entitled to the remedy of suppression. HIPAA violations are punished through the imposition of civil and criminal penalties against covered entities. 42 U.S.C. §§ 1320d-5, 1320d-6. There is no right to private action or relief for HIPAA violations. *Dominic J. v. Wyoming Valley West High School*, 362 F.Supp.2d 560, 573 (M.D.Pa. 2005). Furthermore, although the Pennsylvania appellate courts have not addressed this issue, numerous other jurisdictions have held that suppression is not an appropriate remedy for HIPAA violations. *Elliott*, *supra*; *United States v. Zamora*, 408 F.Supp2d 295 (S.D. Tex. 2006); *State v. Carter*, 23 So.3d 798, 800-801 (Fla. Ct App. 2009); *State v. Yenzer*, 195 P.3d 271 (Kan.Ct.App. 2009); *State v. Bauer*, 931 N.E.2d 1283, 1292 (Ill.Ct.App. 2010); *State v. Eichhorst*, 879 N.E.2d 1144,1154-1155 (Ind.Ct.App. 2008); *State v. Straehler*, 745 N.W.2d 431 (Wis.Ct.App. 2007).[8]

---

[8] *See also Baum v. Keystone Mercy Health Plan*, 826 F.Supp.2d 718, 721 (E.D. Pa. 2011) (no private right of action under HIPAA). There are multiple federal cases from the eastern, middle, and western districts of Pennsylvania that are not reported in the federal reporter that hold, while acknowledging that neither the United States Supreme Court or the Court of Appeals for the Third Circuit has addressed the issue of whether there is a private right of action under HIPAA, no such right is implied in the statute nor is a remedy found within the statute. *See*, *e.g.*, *Henderson v. Borough of Baldwin*, 20116 WL 5106945 (W.D. Pa. 2016) (HIPAA does not

*(Footnote Continued Next Page)*

[Appellant also] contends that the Uniform Act to Secure the Attendance of Witnesses from Within or Without a State in Criminal Proceedings (42 Pa.C.S.A. 5961, et seq.) is not the proper procedure for the Commonwealth to obtain [Appellant's] medical records. According to [Appellant], neither this Act nor any other specific act in Pennsylvania permits obtaining documents; therefore the proper procedure would be to first obtain the records pursuant to HIPAA regulations. Since the court has found that the records were obtained pursuant to the law enforcement exception contained in the HIPAA regulations, [Appellant] is not entitled to relief on his claim that the records were improperly obtained pursuant to the Uniform Act.

The court also notes that the records were not obtained in response to the Commonwealth's subpoena, but rather the judges' certificate and orders. While a court can compel the release of records to a party, a subpoena can only compel production of records at a hearing or other judicial proceeding. Pa.R.Crim.P. 107 ("A subpoena in a criminal case shall order the witness named to appear before the court at the date and time specified, and to bring any items identified or described."); see also Pa.R.[C.]P. 234.1(c) ("A subpoena may not be used to compel a person to appear or produce documents or things ex parte before an attorney, a party or a representative of a party.").

Trial Court Opinion (Suppression), 12/23/15, at 3–7 (emphasis in original).

Next, Appellant posits that the trial court erred in granting the

Commonwealth's motions *in limine* to exclude 1) opinion evidence of defense

witness, Dr. Vey, that after Appellant shot the victim, the victim could have

*(Footnote Continued)* ────────────

create a private right of action); **Tapp v. Brazill**, 2011 WL 6181215 (E.D. Pa. 2011) (same); **Ball v. Famiglio**, 2012 WL 1886676 (M.D. Pa. 2012) (same). Of course, the decisions of federal courts are not binding on Pennsylvania state courts, even when a federal question is involved; however, Pennsylvania state courts follow the Third Circuit Court of Appeals whenever possible. **Feleccia v. Lackawanna Coll**., 156 A.3d 1200, 1215 n.6 (Pa. Super. 2017).

folded a knife and put it in his pocket; and 2) evidence of the victim's prior conviction for aggravated assault with a deadly weapon. The Commonwealth filed the motions on March 7, 2016, and March 18, 2016, respectively. Appellant also maintains the trial court abused its discretion in excluding proffered testimony that it is not unusual for witnesses to be uncooperative. Appellant's Brief at 31–35. We disagree.

We note our standard of review:

> In evaluating the denial or grant of a motion *in limine*, our standard of review is the same as that utilized to analyze an evidentiary challenge. ***Commonwealth v. Pugh***, 101 A.3d 820, 822 (Pa. Super. 2014). It is well settled that "the admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion." ***Commonwealth v. Woodard***, 129 A.3d 480, 494 (Pa. 2015) (citation omitted). "An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." ***Id***. (citation omitted). "The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

***Commonwealth v. Hicks***, 151 A.3d 216, 224 (Pa. Super. 2016), *appeal denied*, 168 A.3d 1287 (Pa. 2017).

The March 7, 2016 motion *in limine* asserts, *inter alia*, that Dr. Vey opined[9] "that because the victim was not incapable of performing physical activity[,] he may have been capable of closing a pocket knife and returning it to his pocket after being shot, but before collapsing." Motion *in Limine*, 3/7/16, at ¶ 3. The Commonwealth also maintained that Dr. Vey's testimony was speculative and would not assist the jury. *Id*. at ¶¶ 6, 9. Appellant explains that when police obtained the victim's clothing, the victim had a folded utility knife in his shorts pocket, and Appellant intended to testify that the victim had a knife in his hand when Appellant shot him. Appellant's Brief at 31. Appellant maintains that the trial court's conclusion that the proffered testimony was speculative was an abuse of discretion. *Id*. at 32. Other than citing a case regarding an expert's use of hypothetical questions, Appellant cites no case law in support of his claim. *Id*. at 31–32.

The trial court addressed Appellant's issue at length. We rely on the court's thorough explanation:

> In his expert report, Dr. Vey noted that the gunshot wound (GSW) sustained by the victim caused a perforation of his left upper and lower lung lobes, but did not cause any damage to his

_____

[9] While the motion *in limine* asserts that Dr. Vey's report is attached to the motion, it was not in the record certified to us on appeal. Ultimately, we had to enter an order directing supplementation of the record. We remind Appellant that "[i]t is an appellant's duty to ensure that the certified record is complete for purposes of review." *Commonwealth v. Lopez*, 57 A.3d 74, 82 (Pa. Super. 2012) (citing *Commonwealth v. Reed*, 971 A.2d 1216, 1219 (Pa. 2009)).

heart. Dr. Vey opined that "contrary to popular belief, aside from certain GSWs to the brain, physical activity of a person that has been fatally shot does not necessarily cease immediately after injury. GSWs to the heart and lung are often associated with extended activity until blood loss causes shock, followed by death." Dr. Vey noted several examples from the medical literature where individuals were capable of walking upstairs and lying down in bed, returning fire, and dialing an old fashioned rotary telephone after sustaining GSWs to vital organs. He then further opined: "Given the preceding, relatively prolonged physical activity on the part of the victim, after having been shot, it is not unreasonable, and it is conceivable that he may have been capable of closing a pocket knife and returning it to his pocket after having been shot, but prior to his collapse." Dr. Vey also opined, based on the absence of soot and powder stippling, that the range of fire in this case was no closer than 18-24 inches. Near the end of his report, Dr. Vey states: "The preceding conclusions are based on my knowledge, training and experience, which encompasses the foregoing discourse, and the medical and scientific journal article citations and treatises pertaining thereto; and are given to a reasonable degree of medical and scientific certainty."

Dr. Vey provided the defense with a second report in which the only change or difference appeared to be removal of the word "conceivable" and replacement with the phrase "it may have been possible" in Dr. Vey's opinion regarding the victim's ability to close a pocket knife and return it to his pocket after having been shot, but prior to his collapse.

\* \* \*

The court granted the Commonwealth's motions because Dr. Vey's opinion, as stated in his expert reports, regarding the victim's ability to close a pocket knife and put it in his pocket was not sufficiently definite and did not meet the standard for expert testimony.

The way the court understood Dr. Vey's opinion, it was *conceivable that the* [*victim*] *may have been capable* of closing the pocket knife or *it may have been possible* for the [victim] to close a pocket knife and return it to his pocket after having been shot, but prior to his collapse. These italicized terms were too indefinite. To the court, Dr. Vey's opinion was no more definite

than maybe the victim could do it and maybe he couldn't. Although an expert need not use "magic words" or hold his opinion to an absolute certainty, an opinion based on mere possibilities is not competent evidence. **Commonwealth v. Gonzalez**, 109 A.3d 711, 727 (Pa. Super. 2015); **Gillingham v. Consol Energy, Inc.**, 51 A.2d 841, 849 (Pa. Super. 2012).

The court acknowledged that it may have misunderstood or misconstrued Dr. Vey's reports. If Dr. Vey meant that the [victim] had the capability of closing a knife and placing it in his pocket for a period of time immediately after being shot and gradually lost that capacity due to blood loss but he could not pinpoint the exact moment that the decedent lost this capacity, or if Dr. Vey meant the [victim] could close the knife and place it in his pocket under certain circumstances and he could state what those circumstances would be, Dr. Vey could author an amended report stating such. Based on the expert reports that Appellant provided to the court, however, the court could only guess or speculate what the victim's capabilities were. Dr. Vey never issued a more definitive report. The court also noted that the parties did not provide the court with any facts or circumstances from which the jury could conclude that the victim ever had the knife out of his pocket. Therefore, the court precluded Dr. Vey from rendering any expert opinion regarding the victim's ability to close a pocket knife and place it in his pocket after he was shot.

Pa.R.A.P. 1925(a) Opinion, 2/6/17, at 7–10 (emphasis in original).

Appellant's argument on appeal does not convince us that the trial court abused its discretion in proscribing Dr. Vey's opinion.

Next, Appellant urges that the trial court abused its discretion in precluding evidence of the victim's conviction for assault with a deadly weapon. Appellant's Brief at 33. The Commonwealth filed a motion *in limine* on March 18, 2016, seeking to preclude the victim's 2003 out-of-state conviction for misdemeanor assault with a deadly weapon. Motion *in Limine*, 3/18/16, at ¶¶ 3–4. In precluding admissibility of the conviction, the trial

court noted that the crime occurred on January 1, 2002, and "involved the victim brandishing a wooden stick to take another individual's wallet." Pa.R.A.P. 1925(a) Opinion, 2/6/17, at 11. The trial court stated:

When a claim of self-defense is properly at issue, evidence of the victim's prior convictions for aggression may be admitted for two limited purposes: (1) to corroborate the defendant's knowledge of the victim's violent character to show that the defendant reasonably believed he was in danger, or (2) as character/propensity evidence to show that the victim was the aggressor. ***Commonwealth v. Mouzon***, 53 A.3d 738, 741 (Pa. 2012. Not every conviction, however, is admissible for these purposes. Instead, only those crimes that are similar in nature and not too distant in time will be relevant and admissible. ***Id***. Furthermore, the determination as to similar nature and remoteness rests within the sound discretion of the trial judge. ***Id***.

The court found that the conviction was too remote and not similar enough to shed any light on whether the victim was the initial aggressor in this case. The victim's conviction occurred more than ten years before this incident and approximately thirteen (13) years before Appellant's trial. The victim did not possess or use a knife, but rather a wooden stick. Furthermore, there was nothing to indicate that Appellant was aware of this conviction, and the uncontested evidence presented at trial showed that the victim punched or attempted to punch Appellant before the victim was shot. Therefore, this evidence was not probative of any issue in this case.

Pa.R.A.P. 1925(a) Opinion, 2/6/17, at 11–12.

Appellant asserts that he endeavored to admit the conviction as evidence that the victim herein was the aggressor. Appellant's Brief at 34. Our review of the record reveals that the Commonwealth **conceded** that the victim was the aggressor. ***See*** N.T. (Closing), 4/18/16, at 124 ("Both [Appellant] and Archie Bell confirm that [the victim] came up from behind

[Appellant], and either attempted to throw, or threw a punch. **So obviously [the victim] initiated this physical altercation. We understand that, we concede that**.") (emphasis added). This issue lacks merit.

The third subpart to this issue relates to the trial court's exclusion of testimony from Greta Davis, an attorney from the Public Defender's Office, during surrebuttal "that it is not unusual for witnesses to be uncooperative to either side when they perceive themselves as a witness for the other side." Appellant's Brief at 35; N.T., 4/18/16, at 48. Appellant avers that he desired to present this testimony after the Commonwealth put on rebuttal testimony by Detective Stephen Sorage that when he interviewed defense witnesses Rashawn Ruley and Rasheem Johnson, they did not respond to questions. *Id*. at 34–35. The trial court declined admission of the testimony because it was not relevant, and it was speculative. N.T., 4/18/16, at 49. In defending its decision, the trial court stated:

> What was relevant in this case was not some vague generalization regarding why some individuals might not cooperate with law enforcement, but rather why the particular witnesses in this case did not speak with law enforcement. The proffer regarding Ms. Davis'[s] testimony was not specific to the defense witnesses in this case.

Pa.R.A.P. 1925(a) Opinion, 2/6/17, at 18–19.

The trial court's decision was not an abuse of discretion. The proffered testimony was too remote, speculative, and irrelevant to Detective Sorage's testimony regarding these witnesses. Moreover, even if the trial court's

decision is indefensible, any error was harmless. "[A]n erroneous ruling by a trial court on an evidentiary issue does not require us to grant relief where the error was harmless." *Commonwealth v. Chmiel*, 889 A.2d 501, 521 (Pa. 2005). There is no reasonable probability that the proscription of Ms. Davis's testimony may have contributed to the verdict. *Id*. This issue lacks merit.

Appellant's final issue also is presented in three subparts, which are further subdivided. Appellant suggests the trial court erred by allowing evidence offered by the Commonwealth, including: Appellant's intercepted telephone calls, testimony that Appellant's girlfriend telephoned a friend to ask to borrow money, and hearsay testimony in rebuttal that a witness had informed Shariah Worthy when the victim died. Appellant's Brief at 36–39.

Appellant initially argues that the trial court erred in admitting two telephone calls by the Commonwealth. The first was a call between Appellant and "Clint" on June 7, 2014, when Appellant was incarcerated in North Carolina. Appellant's Brief at 36. Appellant avers that while the trial court limited portions that could be played to the jury, it erroneously permitted some parts. Appellant maintains that the portion of the call when the police K-9 chased Appellant into the bushes is "irrelevant." Appellant's Brief at 36. Because Appellant can be heard swearing, he maintains "it portrayed him in an unfair light to the jury." *Id*.

The second telephone call between Appellant and his mother involved a discussion about Shariah Worthy. Appellant's Brief at 36. Appellant asserts that he objected to portions of the call wherein Appellant told his mother that Ms. Worthy told the victim that Appellant was abusive. Appellant allegedly denied such abuse to his mother. *Id*. at 37.

Appellant also contends that the trial court erred in admitting testimony of Amelia Nance, a friend of Appellant's girlfriend, Erica Lambert. Appellant's Brief at 37. Appellant avers that he objected to Ms. Nance's testimony that Ms. Lambert asked her to borrow $100 on June 1, 2014, on the basis of hearsay. *Id*. (citing N.T., 4/13/16, at 92). Appellant contends that the trial court's determination that the statement was not hearsay was erroneous. Appellant's Brief at 38.

Lastly, Appellant assails the trial court's decision to permit testimony from Alisa Jackson, a friend of Ms. Worthy, who testified that she texted Ms. Worthy at 3:51 a.m. on June 1, 2014, and informed her that the victim had died. Appellant's Brief at 38. Appellant asserts that he had testified that when he fled Pennsylvania, until he was in Virginia, he did not know the victim had died. *Id*. The Commonwealth allegedly introduced cellular telephone records that indicated Appellant and Ms. Worthy had telephone communication shortly after 3:51 a.m. Appellant argues that the testimony was hearsay. *Id*. at 39.

We note that Appellant fails to cite one case in support of any argument he advances on this issue. Further, he fails to identify, with one exception, where in the record any of his claims are substantiated. Moreover, Appellant's arguments in his brief are conclusory and undeveloped. They are nothing more than a restatement of his positions; he fails even to adequately explain the trial court's reasons supporting its evidentiary rulings. Appellant's Brief at 36–39. Appellant wholly fails to refer to relevant or controlling case law. *See Commonwealth v. Woodard*, 129 A.3d 480, 509 (Pa. 2015) (quoting *Wirth v. Commonwealth*, 95 A.3d 822, 837 (Pa. 2013), which stated that "where an appellate brief fails to . . . develop an issue in any other meaningful fashion capable of review, that claim is waived. It is not the obligation of an appellate court to formulate [the] appellant's arguments for him.") (internal quotations omitted)).

Despite the conclusory and undeveloped nature of his claims, we do not find them waived. The trial court thoroughly addressed these contentions, and we rely on the trial court's evaluation and rejection of the claims:

> Appellant also claims the trial court erred by admitting intercepted phone calls/visits during the Commonwealth's case-i-chief, including one with "Clint" from June 7, 2014[,] where Appellant discussed being attacked by the police canine; and one from June 16, 2014[,] with his mother (Commonwealth Exhibit 110, June 16, 2014, from 30:48 to 31:18 minutes) where he discussed Sheriah Worthy bringing the victim and Bell to the

Hookah Lounge. Appellant contends the calls were irrelevant to the charges and the June 16 call was triple hearsay.

During the June 7th call, Appellant tells "Clint" that he would not have surrendered to the police if it wasn't for the dog biting him. After "Clint" and Appellant discussed the number of staples and stitches Appellant received for his injuries, Appellant stated, "That John was tearing me up, bull. I wouldn't have gave (sic) up but that dog, bull. I wouldn't have gave (sic) up, but that dog that mother f—r bite he make (sic) me give up."

This call was clearly relevant to the charge of flight to avoid apprehension or prosecution. It also tended to rebut Appellant's claims that he went to North Carolina for reasons other than to avoid apprehension for his charges. If that were true or if Appellant was not aware that the victim had died at the time he left Pennsylvania, he would not have fled from law enforcement officers in North Carolina before the officers even had a chance to tell him why they were there. The evidence was also relevant and admissible to show Appellant's consciousness of guilt.[2]

> [2] For the sidebar discussion about the admissibility of this call, see N.T., April 14, 2016, at 53-55. The call was played during Agent Kevin Stiles['s] testimony in the Commonwealth's case in chief. *Id*. at 100-101.

As far as the court can tell, the June 16 visitation recording between Appellant and his mother or a female relative was not admitted during the Commonwealth's case-in-chief; instead, it was played during cross-examination of Appellant. N.T., April 15, 2016, at 142.

During direct examination, Appellant stated that he left the Hookah Lounge, saw his daughter's mother (Shariah Worthy) outside on the sidewalk and asked her if she had a ride. She said yes she was waiting for her brother, and before Appellant could respond he was punched in the right side of his face. *Id*. at 57. On cross examination, the prosecutor asked Appellant why Shariah walked out of the Hookah Lounge that night. [Appellant] answered, "I asked her to go home."

The June 16, 2014 recording was admitted to impeach Appellant's testimony and show that Appellant kicked Ms.

Worthy out of the Hookah Lounge and his interaction with her was not as amicable as he made it seem.

The transcript of the recording from between 30:48 and 31:18 (contained in Commonwealth Exhibit 110, along with several other calls and visitations) consisted of the following statement by Appellant:

> You brought them there, you brought them there, you brought them there, because they told her, they told her, this [is] what they told her: we're not going to let him do nothing. I don't put my hands on her. Know what I'm saying? But I do, when she's in certain clubs, we can't be in, we can't party together. I kicked her out. And, they told her we're not going to let him to (sic) nothing to you. So she was telling them that I was doing something to her, which, you're my daughter's mom, I'm not going to put my hands [sic] I have to.

This issue was discussed during a lengthy sidebar conference. N.T, April 15, 2016, at 128-137. Appellant's statements fell within the hearsay exception in Rule 803(25) of the Pennsylvania Rules of Evidence. The statements of other people were not offered for the truth of the matter asserted.

Moreover, immediately after the recording was played the court gave the jury a cautionary instruction about the use of this evidence. *Id*. at 142-143. Appellant's counsel then requested another sidebar, during which he requested a further instruction to the jury. *Id*. at 144-147. The court then gave an additional instruction specifically explaining to the jury that the first portion of the statement about what other people said could not be considered for the truth of the matter asserted. *Id*. at 147-148.

Appellant next avers the trial court erred by admitting, over defense objection, the testimony of Amelia Nance that Erica Lambert borrowed money from her on June 1, 2014. Appellant contends that the entirety of Ms. Nance's testimony was inadmissible hearsay. The court did not agree.

Hearsay is defined as a statement that: (1) the declarant does not make while testifying at the current trial or hearing;

- 42 -

and (2) the party offers in evidence to prove the truth of the matter asserted in the statement. Pa.R.E. 801(c).

Ms. Nance's testimony was not hearsay. Generally, Ms. Nance did not testify about statements Erica Lambert made to her. Instead, she testified about actions she herself took in response to a phone call from Erica Lambert. Ms. Nance testified that sometime between 7:00 and 8:00 a.m. on June 1, 2014[,] she met Ms. Lambert at a Sheetz gas station in Chambersburg[,] PA. Appellant, who she knew as Dewboy, was with Ms. Lambert. Ms. Lambert and Appellant were in a champagne or gold colored car. N.T., April 13, 2016[,] at 91-94.

The only reason the contents of the phone call were discussed was to show how Ms. Nance knew to go to that particular Sheetz gas station. The prosecutor asked, "How did you know to go to that spot?" In response to that question, Ms. Nance replied, "Okay so she (Erica Lambert) called me and she asked if she could meet me at the Sheetz to borrow a hundred dollars at that particular Sheetz." This statement was not offered to show its truth, i.e. that Ms. Lambert called to borrow a hundred dollars or even that she actually borrowed that amount of money. It was offered to show how Ms. Nance knew to meet Ms. Lambert at that location. Therefore, the discussion of the contents of the phone call was not hearsay.

Appellant also asserts the trial court erred by admitting the victim's jean shorts into evidence during the Commonwealth's rebuttal when it failed to introduce this evidence in its case-in-chief. The court did not agree.

This evidence was proper rebuttal evidence. In its case-in-chief, the Commonwealth presented evidence that the victim was not brandishing a knife during the incident and that a knife was found in the victim's pocket. There also was evidence that the victim's blood was on the knife. The defense presented evidence that the victim had a knife in his hand before Appellant shot him. The Commonwealth realized that, based on the defense testimony that the victim had a knife in his hand, the defense would argue that the blood on the knife would corroborate the testimony of the defense witnesses. The Commonwealth introduced the victim's jean shorts to show that the pocket was soaked with blood. This evidence was admitted to rebut the defense evidence and show that the victim's blood

seeped through the shorts and was transferred from the pocket to the knife while the knife was in the victim's pocket.  See N.T., April 15, 2016[,] at 173-175.

Appellant also avers the trial court erred by admitting the testimony of Alisa Jackson, in rebuttal, that she told Sheriah Worthy that the victim was deceased at 3:41 a.m. on June 1, 2014, because that testimony was entirely hearsay.

This evidence was not being offered for the truth of the matter that the victim actually died at 3:41 a.m., but rather as a link in the chain of circumstantial evidence to show that Appellant was made aware of the victim's alleged death before he fled from Pennsylvania to High Point, North Carolina.

Appellant claims the trial court erred by denying the defense request to present testimony in surrebuttal that it is not uncommon for witnesses to be uncooperative.  The evidence the defense wanted to present was testimony from Greta Davis, another attorney in the Public Defender's Office.  See N.T., April 18-19, 2016[,] at 48-49.  What was relevant in this case was not some vague generalization regarding why some individuals might not cooperate with law enforcement, but rather why the particular witnesses in this case did not speak with law enforcement.  The proffer regarding Ms. Davis'[s] testimony was not specific to the defense witnesses in this case.

Pa.R.A.P. 1925(a) Opinion, 2/6/17, at 14–19.

We conclude that none of Appellant's issues has merit.  Accordingly, the judgment of sentence is affirmed.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/10/2017

- 44 -