J-E03008-18

2019 PA Super 17

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DOMINIQUE WILLIAM GREEN | : | |
| | : | |
| Appellant | : | No. 1024 WDA 2016 |

Appeal from the Judgment of Sentence June 20, 2016
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0013385-2015

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., BOWES, J., PANELLA, J.,
LAZARUS, J., OTT, J., STABILE, J., DUBOW, J., and MURRAY, J.

DISSENTING OPINION BY BOWES, J.:          FILED JANUARY 23, 2019

My colleagues make a strong case in support of Appellant's guilt of theft. However, he was charged with forgery, and the Commonwealth's proof of that offense fell short.  While I agree that the Commonwealth proved that Appellant intended to defraud St. Moritz by cashing a forged check and obtaining funds to which he was not entitled, it failed to prove the second element of forgery: that he uttered the check with knowledge that the check was forged in a manner specified by statute.  See 18 Pa.C.S. §4101(a)(3).  The Commonwealth's proof that the check was forged does not satisfy its burden of proving that Appellant knew the check was forged.  Since, in my view, the evidence was legally insufficient to support the forgery conviction, I respectfully dissent.

The evidence revealed that in mid-to-late August of 2015, St. Moritz discovered that eighteen fraudulent checks were drawn on its payroll account. The company president, Leslie Schattauer, initiated a fraudulent-check investigation with the assistance of Officer Terry Bradford of the Whitehall Police Department. During the course of the investigation, Officer Bradford contacted Appellant and asked to speak to him regarding a check that was cashed bearing his name. The officer testified at the non-jury trial that Appellant volunteered, "[I] only did it once." N.T. Non-Jury Trial, 6/20/16, at 27. The officer testified further that, after he advised Appellant of his Miranda rights, Appellant told the officer that he cashed the check at K-Mart because he needed money to pay off fines. Appellant continued that he did not know where the check came from or who sent the check; it came in the mail. Id., at 29-30. Appellant confirmed that he never worked for St. Moritz and admitted that he did not have any reason to receive a check from that entity.

Ms. Schattauer testified that the check herein was one of "a series of checks that were fraudulently using the check numbers that were drawn currently and accurately." Id. at 18. In addition, the fraudulent checks contained the same routing numbers as genuine company checks. However, she explained that the formatting and signatures on the checks were not consistent with the company's legitimately issued checks. Id. at 20-21. In addition, the amounts payable on the checks were significantly higher than

St. Moritz's typical payroll checks and the payees were unknown to St. Moritz.[1] Id. at 18-20. Ms. Schattauer stated that she recognized the check was a forgery because of her experience with company checks; she posited that employees would notice the difference between a duly-issued payroll check and the forged check because they would have received the former.[2] Id. at 23. Thus, while the Commonwealth proved that the check cashed by Appellant was a forgery, one could reasonably infer from Ms. Schattauer's testimony that it was not an obvious forgery unless one was familiar with real St. Moritz checks.[3]

Ms. Schattauer confirmed Appellant's statement to police that he had no connection to St. Moritz. Nonetheless, he endorsed the check payable to himself purportedly drawn on St. Moritz's payroll account and cashed it. No

_____

[1] The certified record has been supplemented with a copy of the check. The only handwriting on the check is the endorsement "Dominique Green" on the reverse side of the check. The line for the name of the payee is blank. The typewritten name and address of Dominique Green appears on the front of the check below the amount payable, not on the line designated for the payee.

[2] The Commonwealth did not introduce into evidence a genuine St. Moritz payroll check for purposes of comparison. The only evidence of the appearance of a real check is Ms. Schattauer's verbal description.

[3] I submit that since the Commonwealth's evidence established that persons familiar with St. Moritz checks would recognize the check herein as a forgery, but that Appellant had no connection to St. Moritz, it is unreasonable to infer that he would have known it was a forgery simply by looking at the check absent evidence that he created the forged check. Furthermore, the use of check numbers duplicating duly-issued checks, as well as the proper routing number, suggests that the forger had some familiarity with St. Moritz checks.

one would dispute that Appellant's negotiation of the check, when he knew he had no right to the money, constituted theft, and evidenced an intent to defraud St. Moritz.  However, Appellant was charged with forgery pursuant to 18 Pa.C.S. §4101(a)(3), which requires proof that he uttered a writing that he knew to be forged.  See §4101(a)(3) ("A person is guilty of forgery if, with intent to defraud or injure anyone, or with knowledge that he is facilitating a fraud or injury to be perpetrated by anyone, the actor . . . (3) utters any writing which he knows to be forged in a manner specified in paragraphs (1) or (2) of this subsection.").[4]  Thus, the Commonwealth had to prove beyond a reasonable doubt not only that the check was forged, and that Appellant intended to defraud, but that he uttered it knowing it was forged in a manner defined in either subsections (1) or (2).  There was no evidence that Appellant uttered it knowing that it had been altered, made, issued, or transferred by someone without the authority to do so.

_____

[4]  Under subsection (3), the Commonwealth must show that the defendant uttered the instrument knowing it to be forged in a manner specified in either subsection (1) and (2):

> (1)    alters any writing of another without his authority;
>
> (2)    makes, completes, executes, authenticates, issues or transfers any writing so that it purports to be the act of another who did not authorize that act, or to have been executed at a time or place or in a numbered sequence other than was in fact the case, or to be a copy of an original when no such original existed; . . .

18 Pa.C.S. § 4101.

- 4 -

Appellant relied upon our decision in Commonwealth v. Gibson, 416 A.2d 543 (Pa.Super. 1979), in support of his contention that evidence that one possessed and tried to negotiate a forged check alone was not sufficient to support a forgery conviction. Gibson attempted to cash a $150 personal check made payable to cash, which was ostensibly signed and endorsed by Elsworth Kutz. Mr. Kutz testified at trial, however, that some of his checks were missing and that he had not written a $150 check, thus establishing that the check was forged. We held that Kutz's testimony that he had not written the check, and that some of his checks were missing, together with evidence the check was in Gibson's possession, did not justify the conclusion that Gibson forged it or knew it was forged.

I am unpersuaded by the Majority's attempt to distinguish Gibson on the basis that it involved a forged personal check made payable to cash. Appellant's possession of a forged company payroll check bearing his name and address simply does not permit a reasonable inference that he created the forged check, or that he knew the check was forged in a manner specified in the statute.[5]

The sufficiency of the evidence is a question of law. On appeal, we are tasked with determining "whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, viewed in the light most favorable to

_____

[5] The Commonwealth offered no evidence linking Appellant to any of the other seventeen people who cashed similar checks.

the Commonwealth as the verdict winner, were sufficient to prove every element of the offense charged beyond a reasonable doubt." Commonwealth v. Williams, 176 A.3d 298, 305 (Pa.Super. 2017). Although we may not reweigh the evidence, we must scrutinize the record to determine whether the evidence was sufficient, if believed, to prove every element of the offense charged. In my view, the Commonwealth did not introduce even circumstantial evidence that Appellant negotiated the check with knowledge that it was a forged in the manner outlined by the statute. His conviction rested on the fact that the check was an actual forgery, which is insufficient.[6] Without such evidence, I believe the forgery conviction is infirm.

For these reasons, I respectfully dissent. I would vacate the conviction and discharge Appellant.

President Judge Emeritus Bender and Judge Stabile join the Dissenting Opinion.

_____

[6] The majority appears to apply strict liability to §4101(a)(3), and reads it as saying "utters any writing that is forged in a manner specified . . ." as opposed to "utters any writing which he knows to be forged in a manner specified in paragraphs (1) or (2)."