J-S05030-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES M. YEAGER | : | |
| | : | |
| Appellant | : | No. 288 WDA 2022 |

Appeal from the Judgment of Sentence Entered September 20, 2021
In the Court of Common Pleas of Venango County Criminal Division at
No(s): CP-61-CR-0000896-2019

BEFORE: BENDER, P.J.E., LAZARUS, J., and McLAUGHLIN, J.

MEMORANDUM BY LAZARUS, J.:          **FILED: March 15, 2023**

James M. Yeager appeals, *nunc pro tunc*,[1] from the judgment of sentence, entered in the Court of Common Pleas of Venango County, after a jury convicted him of ten counts each of rape of a child,[2] statutory sexual assault,[3] involuntary deviate sexual intercourse with a child,[4] aggravated

---

[1] The trial court denied Yeager's post-sentence motions on January 24, 2022. On March 7, 2022, new counsel filed a motion to reinstate Yeager's appellate rights, *nunc pro tunc*, asserting that Yeager was requesting an appeal, but prior counsel had yet to withdraw his appearance or file a notice of appeal on Yeager's behalf. ***See*** Motion for Appeal *Nunc Pro Tunc*, 3/7/22, at ¶ 6. On March 9, 2022, the trial court granted Yeager leave to file an appeal, *nunc pro tunc*. Yeager filed a notice of appeal, *nunc pro tunc*, on March 10, 2022.

[2] 18 Pa.C.S.A. § 3121(c).

[3] ***Id.*** at § 3122.1(b).

[4] ***Id.*** at § 3123(b).

indecent assault,[5] unlawful contact with a minor,[6] unlawful restraint,[7] and indecent assault.[8]  On appeal, Yeager claims that the verdicts were against the weight of the evidence.[9]  We affirm.

This case arises from Yeager's sexual abuse of G.G.  Yeager, who is a relative of G.G.'s, lived on the same property in Harrisville, Venango County, as G.G. and his mother, siblings, and grandparents.[10]

G.G., who was 15 years old at the time of trial, testified that he was 6 or 7 years old when Yeager abused him.  *See* N.T. Jury Trial, 7/26/21, at 43. He testified that Yeager made him perform oral sex on him "around 7" times, but he did not know the exact number.  *Id.* at 46-47 (G.G. testifying, "I cannot remember all of it. . . . I try to block out most of those memories.").  G.G.

---

[5] *Id.* at § 3125(b).

[6] *Id.* at § 6318(a).

[7] *Id.* at § 2902(a)(2).

[8] *Id.* at § 3126(a)(7).

[9] In the argument section of his brief, Yeager also purports to raise an issue related to the jury charge.  This claim is waived for two reasons.  First, Yeager failed to raise a timely objection at the time of trial.  *See* Pa.R.Crim.P. 647(C) ("No portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate.").  Second, Yeager did not include the claim in his statement of the questions involved, nor is it fairly suggested thereby.  *See* Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.").

[10] The property contained a number of residences, including trailers and houses.  *See* N.T. Jury Trial, 7/26/21, at 27.

had previously testified that Yeager forced him to perform oral sex approximately 10 to 15 times. *See id.* at 120-21; N.T. Preliminary Hearing, 11/13/19, at 33. G.G. testified that, during the oral sex, he was on his "knees, sometimes, like, bent over and stuff." N.T. Jury Trial, 7/26/21, at 47. G.G. testified that the encounters lasted for 5 to 10 minutes, and that Yeager did not ejaculate either in his mouth or on his person. *Id.* at 48. G.G. stated that it was painful when Yeager "made it further down [his] throat." *Id.* at 49.

G.G. also testified that Yeager engaged in anal sex with him, approximately 7 to 10 times, and that it was painful. *Id.* at 50 ("I haven't felt . . . that pain for . . . awhile."). G.G. had previously testified that anal sex had occurred approximately 10 to 15 times. *See id.* at 122; N.T. Preliminary Hearing, 11/13/19, at 33-34. G.G. stated that Yeager would hold G.G. by the waist to prevent him from getting away during anal sex. N.T. Jury Trial, 7/25/21, at 51-52. Early on when the abuse began, G.G. tried to scream, but Yeager held his hand over G.G.'s mouth. *Id.* at 52. Later, G.G. would just be quiet "[b]ecause [he] was just trying to, like, get it done and over with." *Id.* at 53. G.G. testified that Yeager told him: "If you tell on me, I'll come after you, and . . . we will both get in trouble." *Id.* G.G. testified that Yeager also sometimes used his hands to touch G.G.'s penis. *Id.* at 54.

At some point, G.G. came up with a plan to escape "and try to never have to have it done to [him] again." *Id.* at 55. G.G. testified that he would "run and stuff. Well, like, try to . . . move more stuff, so I built up a little more muscle." *Id.* G.G. testified that he was finally able to get away from

Yeager when Yeager was engaging in anal sex with him in a bedroom. *Id.* at 56. G.G. stated that Yeager left the family compound shortly thereafter and speculated that he did so because he was worried G.G. would tell on him. *See id.* at 62 ("I think because . . . I . . . escaped it and then I think he was just kinda, like, leave, so if I tell, he would be, like, gone or somethin'.").

On cross-examination, Yeager's counsel played a video of G.G.'s forensic interview. In that interview, G.G. initially indicated that that it was his Uncle Chris who had abused him. Upon questioning, G.G. stated that he had been confused and that Uncle Chris had never abused him. *Id.* at 106-07. In the forensic interview, G.G. also stated he could not remember whether the abuse occurred in a house or a trailer and that Yeager had not threatened him, contrary to his trial testimony. Yeager's counsel also cross-examined G.G. using preliminary hearing transcripts reflecting G.G.'s testimony that the abuse had occurred when he was ages 5 to 7, as well as disparities in G.G.'s reporting as to the number of times the abuse had occurred, and the time of year it had happened.

On redirect, G.G. testified that, after the abuse happened, he had bloody stool and accidents in his pants. *Id.* at 134. G.G. stated his mother knew about the bloody stools but was not aware of the abuse at the time. *Id.* He also clarified that the confusion regarding Uncle Chris occurred because, at that point in the forensic interview, G.G. was nervous and had just finished describing his family. *Id.* at 139. Finally, G.G. testified that he did not keep

count of specific instances of abuse and that he tried to "forget about this stuff." *Id.* at 133.

On July 27, 2021, a jury found Yeager guilty of the above-cited offenses. The trial court ordered a pre-sentence investigation report and, on September 20, 2021, the court sentenced Yeager to an aggregate term of 20 to 40 years' incarceration.[11]  Yeager filed a post-sentence motion challenging, *inter alia*, the weight of the evidence, which the court denied.  Yeager filed a notice of appeal, *nunc pro tunc*,[12] followed by a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.  He raises the following claim for our review:

> The verdict in this case was against the weight of the evidence in that the Commonwealth did not prove beyond a reasonable doubt that [] Yeager was guilty of the crimes for which he was charged and convicted, based on the fact that the victim's testimony [differed] from the testimony he gave during the forensic interview.

Brief of Appellant, at 2.

A motion for a new trial on the grounds that the verdict is contrary to the weight of the evidence "concedes that there is sufficient evidence to sustain the verdict." *Commonwealth v. Rayner*, 153 A.3d 1049, 1054 (Pa.

---

[11] Specifically, the court imposed a sentence of 20 to 40 years, per count, for rape of a child; 10 to 20 years, per count, for unlawful contact with a minor/without consent—imprisonment; and 1 to 2 years, per count, for unlawful restraint/involuntary servitude.  The remainder of Yeager's convictions merged for purposes of sentencing.  All sentences were ordered to run concurrently.

[12] *See supra* at n.1.

Super. 2016), quoting **Commonwealth v. Widmer**, 744 A.2d 745, 751 (Pa.

2000). Our Supreme Court has described the standard applied to a weight-

of-the-evidence claim as follows:

> The decision to grant or deny a motion for a new trial based upon a claim that the verdict is against the weight of the evidence is within the sound discretion of the trial court. Thus, "the function of an appellate court on appeal is to review the trial court's exercise of discretion based upon a review of the record, rather than to consider *de novo* the underlying question of the weight of the evidence." An appellate court may not overturn the trial court's decision unless the trial court "palpably abused its discretion in ruling on the weight claim." Further, in reviewing a challenge to the weight of the evidence, a verdict will be overturned only if it is "so contrary to the evidence as to shock one's sense of justice."

**Commonwealth v. Williams**, 176 A.3d 298, 312 (Pa. Super. 2017), quoting

**Commonwealth v. Cash**, 137 A.3d 1262, 1270 (Pa. 2016) (internal citations

omitted). A trial court's determination that a verdict did not shock one's sense

of justice is "[o]ne of the least assailable reasons" for denying a new trial.

**Commonwealth v. McGhee**, 230 A.3d 1277, 1287 (Pa. Super. 2020),

quoting **Commonwealth v. Clay**, 64 A.3d 1049, 1055 (Pa. 2013).

A verdict is against the weight of the evidence where "certain facts are

so clearly of greater weight that to ignore them or to give them equal weight

with all the facts is to deny justice." **Commonwealth v. Lyons**, 833 A.2d

245, 258 (Pa. Super. 2003), quoting **Widmer**, 744 A.2d at 751–52. "[W]e

do not reach the underlying question of whether the verdict was, in fact,

against the weight of the evidence. . . . Instead, this Court determines

whether the trial court abused its discretion in reaching whatever decision it made on the motion." **Williams**, 176 A.3d at 312.

Here, Yeager claims that the verdict shocks the conscience because there were inconsistencies in G.G.'s testimony. Specifically, Yeager points out that, in his forensic interview and at the preliminary hearing, G.G.'s stated that Yeager made him perform oral sex 10 to 15 times, while at trial he testified that it was around 7 times. Similarly, in the forensic interview and preliminary hearing, G.G. stated that Yeager performed anal sex 10 to 15 times, while he testified at trial that it occurred "around seven to ten" times. Yeager also cites the fact that G.G. could not remember whether the incidents happened before or after Thanksgiving or whether Yeager had pubic hair, and that G.G. had originally identified "Uncle Chris" as his abuser.

The trial court concluded that the verdict did not shock its sense of justice. While the court acknowledged certain inconsistencies in G.G.'s testimony, it also noted that defense counsel had the opportunity to thoroughly cross-examine G.G. using footage of the forensic interview, as well as G.G.'s preliminary hearing testimony. Thus, the jury was "well aware of the inconsistencies." Trial Court Opinion, 1/24/22, at 7.

Upon our review of the record, we can discern no abuse of discretion in the trial court's rejection of Yeager's weight claim. As the trial court noted, defense counsel strenuously cross-examined G.G., utilizing both the forensic interview video and the preliminary hearing transcripts. Any inconsistencies in G.G.'s testimony were for the jury to resolve. **Commonwealth v. Page**,

59 A.3d 1118, 1130 (Pa. Super. 2013) ("A determination of credibility lies solely within the province of the factfinder.").  Accordingly, Yeager is entitled to no relief.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  3/15/2023