J-S28030-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
MADISON MARIE MORGAIN :
:
Appellant : No. 1285 WDA 2022

Appeal from the Judgment of Sentence Entered October 25, 2022
In the Court of Common Pleas of Butler County Criminal Division at
No(s): CP-10-CR-0002024-2020

BEFORE: PANELLA, P.J., OLSON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OLSON, J.: **FILED: September 29, 2023**

Appellant, Madison Marie Morgain, appeals from the judgment of

sentence entered October 25, 2022. We affirm.

The trial court summarized the relevant facts of this case as follows.

On October 17, 2020, [Appellant] was at [a residence along]
Branchton Road, Cherry Township[, Pennsylvania, (hereinafter,
the "Branchton Road residence")] attending a party. She was
at the party with her boyfriend, [Bill] McGregor[.] Pennsylvania
State Trooper Casey Fuller[,] who testified credibly at both the
pretrial hearing and trial, was dispatched to the Branchton Road
residence for an active domestic call between [Appellant] and
McGregor.

Once he arrived on scene at approximately 2:00 [a.m.], Trooper
Fuller observed [Appellant] and McGregor around a vehicle that
belonged to [Appellant]. The rear window was broken as a
result of McGregor punching it, which [caused] an ambulance
[to be summoned] to treat his injured hand. Trooper Fuller and

_____

[*] Former Justice specially assigned to the Superior Court.

others affixed a tarp to the broken window in an effort to keep the elements from entering the [vehicle's interior].

[Appellant] during this initial interaction with Trooper Fuller was distraught and heavily intoxicated. She had bloodshot and glassy eyes, dilated pupils[,] and had a strong odor of alcohol emanating from her breath and person.

Trooper Fuller, while advising [Appellant] to go home and away from the scene of the domestic call, was told by [Appellant] that she was too drunk to drive herself home. Trooper [Fuller] advised [Appellant] to find a friend to give her a ride home. During the entire [interaction], Trooper [Fuller] observed [Appellant] with a drink in her hand continually consuming alcohol.

Once the domestic dispute was resolved and the tarp was placed on [Appellant's] vehicle, Trooper [Fuller] left the party to attend to another unrelated call.

[Later,] Trooper Fuller was again dispatched to the same residence due to a disturbance caused by [Appellant]. Robert Rossman, III . . . who lives at the Branchton Road residence, had his wife call the police because [Appellant] would not leave the property hours after being told to [do so]. When the second call to the police was made, [Appellant's] vehicle was observed near the bottom of [] Rossman's driveway. Once Trooper Fuller arrived back at the residence, he was told [that Appellant just left] and her vehicle was no longer on the property. The only person who left the party was [Appellant].

Trooper Fuller arrived back to the Branchton Road residence around 4:30 [a.m.]. After speaking with Rossman who told him [Appellant] recently left, Trooper Fuller was worried about [Appellant's] wellbeing due to her high level of intoxication when he last observed her and the winding backroads she would [navigate] home. The drive between the two houses is roughly three to four miles.

While in transit to [Appellant's] residence, Trooper Fuller spotted on the road the same tarp he had place[d] on [Appellant's] vehicle during his first encounter with her. When he arrived at her residence, [Appellant's] vehicle was parked in the driveway and the tarp was missing from her rear window with visible damage to the rear of the vehicle. While approaching the front door, Trooper Fuller heard [Appellant]

- 2 -

and a male arguing. Concerned the male's voice was McGregor's, Trooper Fuller knocked on the front door and announced himself.

After a brief discussion in the doorway, [Appellant] allowed Trooper Fuller inside her residence to speak with Matthew Jackson, the individual [Appellant] told Trooper Fuller drove her home from the party. During Trooper Fuller's conversation with [] Jackson, [Appellant] changed her story and admitted to Trooper [Fuller] that she drove herself from the party. McGregor was not present in the home.

[Appellant] appeared upset, aggravated and still visibly intoxicated. After admitting to Trooper Fuller she drove herself home, he led her outside and commenced field sobriety testing. Shortly after the field sobriety testing began, [Appellant] stopped cooperating and refused to continue. At this point, Trooper Fuller placed [Appellant] under arrest for suspicion of [driving under the influence ("DUI")] and transported her to Butler Memorial Hospital at approximately 5:30 [a.m.]

\*\*\*

Donna Papsun, M.S., D-ABFT-FT, is board certified from the American Board of Forensic Toxicology, and previously testified in over 140 cases. She was recognized as an expert in the field of forensic toxicology without objection. She has been employed by NMS Labs since 2008 and has been a toxicologist for the last 10 years. She issued a report on the matter dated November 6, 2020.

It was her responsibility, as the signing toxicologist to review the data generated in the lab to guarantee its accuracy. The testing revealed that [Appellant's] blood drawn on the night of the incident had an alcohol reported at 193 milligrams per deciliter. This translates to a [blood alcohol content ("BAC")] of [0].193. [] Papsun made her conclusions to a reasonable degree of professional certainty.

Trial Court Opinion, 2/10/23, at 1-4.

On January 28, 2021, Appellant was charged *via* information with

DUI - general impairment, DUI – highest rate, and careless driving. Appellant

filed an omnibus motion to suppress on January 24, 2022. In her motion, Appellant argued that Trooper Fuller's "failure to obtain a warrant prior to arresting [her] from her residence" violated her "right to privacy under the Fourth Amendment of the United States Constitution and parallel section of the Pennsylvania Constitution." Appellant's Motion to Suppress, 1/24/22, at *3 (unpaginated). Appellant also argued that, because "her blood was not drawn until 5:29 [a.m.]," and because Trooper Fuller "last observed [her] at around 2:58 [a.m.]," the blood sample was not obtained within two hours as required by 75 Pa.C.S.A. § 3802(c). *Id.* Based upon the foregoing, Appellant asked the court to "suppress the chemical tests involving her blood alcohol level, officer testimony and other illegal fruits of the poisonous tree." *Id.* at *4. A hearing was conducted on Appellant's motion on March 23, 2022, during which Trooper Fuller testified. Ultimately, the trial court denied Appellant's motion. Trial Court Order, 3/24/22, at 1.

The matter proceeded to a non-jury trial on September 8, 2022. At the close of testimony, the trial court found Appellant guilty of DUI – general impairment and DUI – highest rate,[1] but not guilty of careless driving. On October 25, 2022, the trial court sentenced Appellant to six months' probation and to pay a fine of $1,000.00. This timely appeal followed.

Appellant raises the following issues on appeal:

> I.     [Whether t]he [suppression] court erred when it denied [Appellant's suppression] motion challenging the

---

[1] 75 Pa.C.S.A. §§ 3801(a)(1) and 3802(c), respectively.

admissibility of [Appellant's] blood alcohol test taken [following] a warrantless search[?]

II. Whether the [suppression] court erred when it denied [Appellant's suppression] motion challenging the admissibility of [Appellant's] blood alcohol test [] when the blood draw was [taken] more than two hours [after Appellant] operat[ed] her vehicle[?]

III. Whether the Commonwealth failed to present sufficient evidence to . . . establish that [(a) Appellant] operated her vehicle and [(b)] that [Appellant] was intoxicated to such a degree that she was incapable of any safe driving to sustain a convict[ion] for a DUI pursuant [to] 75 Pa.C.S.[A. §] 3801(a)(1) and 75 Pa.C.S.[A. §] 3802(c)[?]

Appellant's Brief at 3-4.

Appellant's first two issues challenge the court's suppression ruling. Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is

limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.

We may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

Moreover, it is within the lower court's province to pass on the credibility of witnesses and determine the weight to be given to their testimony.

Furthermore, our Supreme Court clarified that the scope of review of orders granting or denying motions to suppress is limited to the evidence presented at the suppression hearing.

- 5 -

*Commonwealth v. Williams*, 176 A.3d 298, 315–316 (Pa. Super. 2017) (internal citations and quotations omitted).

In her first appellate issue, Appellant claims that Trooper Fuller lacked probable cause to request a blood draw, resulting in an unconstitutional search violating her rights under the Fourth Amendment of the United States' Constitution, as well as Article 1, Section 8 of the Pennsylvania Constitution. Appellant's Brief at 14-20. Appellant, however, did not raise this issue in her suppression motion or during the suppression hearing held on March 23, 2022. Indeed, Appellant's basis for suppression, as set forth in her motion to suppress, was as follows:

> a) Pennsylvania law enforcement's failure to obtain a warrant prior to arresting [Appellant] from her residence [] resulted in a violation of [her] right to privacy under the Fourth Amendment of the United States Constitution and parallel section of the Pennsylvania Constitution.
>
> b) The officer's actions of driving to [Appellant's] residence did not meet the legal requirements of an anticipatory search warrant in violation of the Fourth Amendment of the United States Constitution and parallel section of the Pennsylvania Constitution in the following ways[.]
>
> c) Pennsylvania law enforcement last observed [Appellant] at or around 2:58 [a.m.] at [the Branchton Road residence]. She was [not] in operation of a vehicle at the time [the officer] observed her and even if they did, her blood was not drawn until 5:29 [a.m.], more than two hours from 2:58 [a.m.]

Appellant's Motion to Suppress, 1/24/22, at *3 (unpaginated). Appellant's arguments during the hearing on her suppression motion were similarly limited. **See** N.T. Suppression Hearing, 3/23/22, at 9-36; 46-47. Hence, at

- 6 -

no time prior to the instant appeal did Appellant claim that Trooper Fuller lacked probable cause to demand a blood test. As such, this issue is waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

In her second appellate issue, Appellant contends the trial court erred in denying her motion to suppress the results of the blood alcohol test because it was taken more than two hours after driving. In particular, Appellant claims that the Commonwealth failed "to establish that [she] exercised control of the movement of her vehicle at the time she was intoxicated." Appellant's Brief at 22. Appellant points to the fact that no one, including Trooper Fuller, saw her operate the vehicle. *Id.* Alternatively, Appellant claims that the Commonwealth failed to establish good cause or that she did not imbibe any alcohol between the time she was arrested and the time her blood sample was obtained pursuant to 75 Pa.C.S.A. § 3802(g). *Id.* at 25-26.

This Court previously explained:

Section 3802(a)(1) of the Vehicle Code provides:

> An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa.C.S.[A.] § 3802(a)(1).

Section 3802(c) of the Vehicle Code provides:

> An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the

- 7 -

alcohol concentration in the individual's blood or breath is 0.16% or higher within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S.[A.] § 3802(c). Section 3802(c)'s requirement to take the defendant's blood test within two hours after the individual has driven is subject to a "good cause" exception within section 3802(g), which provides:

Notwithstanding the provisions of subsection . . . (c) . . . where alcohol or controlled substance concentration in an individual's blood or breath is an element of the offense, evidence of such alcohol or controlled substance concentration more than two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle is sufficient to establish that element of the offense under the following circumstances: (1) where the Commonwealth shows good cause explaining why the chemical test sample could not be obtained within two hours; and (2) where the Commonwealth establishes that the individual did not imbibe any alcohol or utilize a controlled substance between the time the individual was arrested and the time the sample was obtained.

75 Pa.C.S.[A.] § 3802(g). In a section 3802(c) prosecution, when the blood test does not take place within two hours after the defendant drives, operates or is in actual physical control of the vehicle, test results are subject to suppression unless Commonwealth proves good cause for the delay in obtaining a blood test and the defendant did not imbibe alcohol between his arrest and his blood test. 75 Pa.C.S.[A.] § 3802(g).

*Commonwealth v. Eichler*, 133 A.3d 775, 786 (Pa. Super. 2016).

A review of the testimony proffered during the suppression hearing reveals the following. Trooper Fuller was dispatched to the Branchton Road residence twice on October 17, 2020. Initially, Trooper Fuller was at the residence between 1:36 a.m. and 2:58 a.m. N.T. Suppression Hearing, 3/23/22, at 12. Trooper Fuller was dispatched to the residence for the second

time at approximately 4:30 a.m. due to complaints that Appellant caused a disturbance. *Id.* at 13. Trooper Fuller arrived to the Branchton Road residence shortly thereafter. *Id.* Upon arrival, Trooper Fuller "observed that [Appellant's] vehicle was no longer at the residence" and he was informed Appellant "left shortly prior to [his] arrival." *Id.* at 14. As such, Trooper Fuller drove to Appellant's residence, located three to four miles away, and ultimately arrived at 4:45 a.m. *Id.* at 15. When Trooper Fuller arrived at Appellant's residence, he observed her vehicle in the driveway and then proceeded to Appellant's front door, wherein he heard Appellant arguing with a male. *Id.* at 16. Concerned for Appellant's safety, Trooper Fuller knocked on Appellant's front door and announced himself. *Id.* Appellant opened the door and invited Trooper Fuller inside. *Id.* at 16-17. Because Trooper Fuller observed that Appellant's eyes were "bloodshot and glassy," her speech was slurred, and an "odor of intoxicating beverages" was emanating from Appellant's "breath and person," he asked Appellant "how she had arrived home." *Id.* at 16. Appellant, as well as her friend, Matthew Jackson, informed Trooper Fuller that Appellant drove her vehicle from the Branchton Road residence to her home. *Id.* at 17. As such, Trooper Fuller attempted to perform field testing to determine Appellant's level of impairment but, ultimately, Appellant refused to comply. *Id.* at 17-18. Accordingly, Trooper Fuller arrested Appellant, took her to the hospital, wherein her blood was drawn at approximately 5:30 a.m. *Id.* at 18; *see also* Trial Court Opinion, 2/10/23, at 10.

We conclude that the trial court correctly denied Appellant's suppression motion. Initially, we note that Appellant was charged under Section 3802(a)(1) and 3802(c). Importantly, Section 3802(a)(1) "does not include 'two hour' language," and, as such, "evidence of blood tests taken more than two hours after driving is admissible under subsection (a)(1) without resort to [S]ection 3802(g)." *Eichler*, 133 A.3d at 787. Hence, Appellant's claim that the court erred in denying her suppression motion fails on this basis.

In addition, we conclude that the trial court correctly denied suppression based upon its finding that Appellant's blood draw occurred within the two-hour time constraint set forth in Section 3802(c). First, the evidence clearly demonstrated that Appellant drove her vehicle home on the morning in question, as both she and her friend admitted to Trooper Fuller. Second, the circumstantial evidence demonstrated that Appellant drove home sometime between 4:00 a.m. and 4:45 a.m. Indeed, it is apparent that Appellant was still at the Branchton Road residence around 4:30 a.m., as her removal from the party was the basis for the dispatch. In addition, Trooper Fuller's testimony showed that, between the time of dispatch and Trooper Fuller's arrival at the Branchton Road residence shortly after 4:30 a.m., Appellant left. Finally, Trooper Fuller testified that he arrived at Appellant's residence at 4:45 a.m. and her vehicle was in the driveway. Thus, we conclude that the Commonwealth demonstrated that Appellant's blood draw, which took place at 5:30 a.m., was conducted within "two hours after [Appellant drove, operated or [was] in actual physical control of the movement

of [her] vehicle." 75 Pa.C.S.A. § 3802(c). Therefore, Appellant's claim of error lacks merit.

In her final issue, Appellant argues that the Commonwealth failed to present sufficient evidence to sustain her convictions under 75 Pa.C.S.A. § 3801(a)(1) and 75 Pa.C.S.A. § 3802(c). Appellant's Brief at 26-29. Appellant claims that the Commonwealth failed to establish that she "operat[ed] or exercise[ed] control of her vehicle" or "a time frame from when [Appellant] allegedly [did so]." *Id.* at 28. We disagree.

As stated above, pursuant to Sections 3801(a)(1) and 3802(c), an individual is prohibited from driving or operating a vehicle after "imbibing a sufficient amount of alcohol" that would prevent safe driving or if there is an "alcohol concentration in the individual's blood or breath [that] is 0.16% or higher within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle." 75 Pa.C.S.A. § 3801(a)(1); 75 Pa.C.S.A. § 3802(c). Importantly,

> "[t]he term 'operate' requires evidence of actual physical control of either the machinery of the motor vehicle or the management of the vehicle's movement, but not evidence that the vehicle was in motion." *Commonwealth v. Johnson*, 833 A.2d 260, 263 (Pa. Super. 2003). "Our precedent indicates that a combination of the following factors is required in determining whether a person had 'actual physical control' of an automobile: the motor running, the location of the vehicle, and additional evidence showing that the defendant had driven the vehicle." *Commonwealth v. Woodruff*, 668 A.2d 1158, 1161 (1995). A determination of actual physical control of a vehicle is based upon the totality of the circumstances. [*Commonwealth v. Williams*, 871 A.2d 254, 259 (Pa. Super. 2005)].

*Commonwealth v. Brotherson*, 888 A.2d 901, 904-905 (Pa. Super. 2005) (parallel citations omitted).

In this instance, the evidence presented during Appellant's trial was substantially similar to that of the suppression hearing. At trial, the Commonwealth presented testimony demonstrating that Appellant, as well as her friend, Matthew Jackson, admitted that she drove herself home from the party. *See* N.T. Trial, 9/8/22, at 12-13. Thus, in contrast to Appellant's claims, the Commonwealth offered direct evidence that Appellant "operat[ed] or exercise[ed] control of her vehicle" on the morning in question. Appellant's Brief at 28; *see also* 75 Pa.C.S.A. § 3802(a)(1); 75 Pa.C.S.A. § 3802(c).

Moreover, the Commonwealth also presented circumstantial evidence regarding the time frame in which Appellant drove the vehicle on the morning in question. In particular, the testimony revealed that (1) Trooper Fuller was dispatched to the Branchton Road residence twice on October 17, 2020; (2) the second dispatch pertained to complaints that Appellant did not leave the party after being asked to do so; (3) Trooper Fuller arrived at the Branchton Road residence for the second time shortly after 4:30 a.m.; (4) upon arrival, the homeowner, Rossman, informed him that Appellant and her vehicle were gone, but everyone else at the party was accounted for; (5) Trooper Fuller than drove to Appellant's residence, which was three to four miles away, and arrived around 4:45 a.m.; and (6) Trooper Fuller observed Appellant's vehicle in the drive way upon arrival. Based upon the forgoing, circumstantial evidence demonstrated that Appellant drove her vehicle from

the Branchton Road residence to her home between 4:00 a.m. and 4:45 a.m. Finally, the Commonwealth introduced evidence demonstrating that, at that time, Appellant was incapable of driving safely. Indeed, following her transport to the hospital, Appellant consented to a blood draw, which revealed that she had a BAC of 0.193%. We therefore conclude that the Commonwealth presented sufficient evidence to sustain Appellant's convictions under Sections 3802(a)(1) and 3802(c).

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/29/2023