J-S13044-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| DENNIS LOUIS MAZZAGETTI | : | |
| | : | |
| Appellant | : | No. 1110 WDA 2023 |

Appeal from the Judgment of Sentence Entered August 21, 2023
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s):  CP-65-CR-0003789-2020

BEFORE:   KUNSELMAN, J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:                **FILED: May 30, 2024**

Dennis Louis Mazzagetti appeals from the judgment of sentence of six months' probation and $1,500 in fines, after the trial court convicted him of driving under the influence of alcohol ("DUI") and a related offense.[1] Mazzagetti contends there was legally insufficient evidence to prove that he was incapable of safely driving to convict him of DUI.  We disagree and affirm.

In 2020, Mazzagetti was working in the kitchen of Twin Lakes Nursing Home, which was an eight minute drive from his house.  While at work, around 11:00 a.m., on May 22, 2020, Mazzagetti's manager contacted the V.P. of Human Resources, Eric Huttenlocher, who had training to identify the indicators of intoxication.  Mr. Huttenlocher met with Mazzagetti in a conference room near the kitchen.  Mazzagetti "was slurring his speech, . . .

---

[*] Former Justice specially assigned to the Superior Court.

[1] *See* 75 Pa.C.S.A. §§ 1543(b)(1)(i) and 3802(a)(1).

making odd commentary regarding government conspiracy, and appeared to be under the influence of some substance." N.T., 8/21/23, at 5.

Suspecting that Mazzagetti was intoxicated at work, Mr. Huttenlocher offered Mazzagetti the chance to take a urinalysis to prove that he was sober. Mazzagetti refused. Mr. Huttenlocher told him that, if he refused urinalysis, the nursing home would fire him. He still refused, and Mr. Huttenlocher began escorting Mazzagetti from the building. As they walked, Mazzagetti's "gait was broken; his stability was off." *Id.* at 6.

Mr. Huttenlocher then offered to call someone to drive Mazzagetti home. Mazzagetti declined the offer, and Mr. Huttenlocher told him, "if he insisted on driving, we would call the state police . . . ." *Id.* at 7. Mazzagetti ignored this warning, got in his blue van, and drove away. Mr. Huttenlocher called the police.

An hour later, the state police located Mazzagetti's van in the driveway of his home; the vehicle was still running. When two troopers approached the van, they saw Mazzagetti slumped over the steering wheel, fast asleep. They knocked on the window. He awoke dazed; disheveled; smelling of alcohol; slurring his speech; and having bloodshot, glassy eyes. In Mazzagetti's lap, he cradled a half-consumed bottle of Tequilla.

The troopers asked him to exit the vehicle. Mazzagetti fell from the driver's seat, and the troopers had to catch Mazzagetti and help him to stand. When the troopers asked if he had driven from the nursing home, Mazzagetti lied to them. Next, Mazzagetti failed a field sobriety test, and the troopers

arrested him. At the state police barracks, Mazzagetti refused blood testing and a breathalyzer test, despite a trooper reading the DL-26 warnings to him.

The case proceeded to a bench trial. The court convicted and sentenced Mazzagetti as described above. This timely appeal followed.

Mazzagetti raises one issue: "Whether the Commonwealth produced sufficient evidence that [he] was incapable of safe driving, [because] the only evidence of [Mazzagetti] being in a state that he could not safely operate his [van] was gathered when he was safely parked at his private residence?" Mazzagetti's Brief at 2.

As Mazzagetti's statement of the issue indicates, his argument rests upon the false premise that the Commonwealth only presented evidence that he was incapable of safely driving after he parked his van in his driveway and passed out behind the wheel. Mazzagetti bases his claim on Mr. Huttenlocher's failure to testify directly that Mazzagetti "could not safely control his vehicle or [that he] committed any traffic violations" as he left the nursing home. *Id.* at 10-11. That testimonial gap is inconsequential to the legal sufficiency of the evidence; it goes to the weight of Mr. Huttenlocher's testimony.

When "reviewing the sufficiency of the evidence, we examine whether the evidence presented and admitted at trial and all reasonable inferences drawn therefrom, viewed in a light most favorable to the Commonwealth as the verdict winner, support the [conviction] beyond a reasonable doubt." *Commonwealth v. Murray*, 83 A.3d 137, 150–51 (Pa. 2013). This issue

presents "a question of law; our standard of review is *de novo*, and our scope of review is plenary." ***Id.*** at 151.

The Pennsylvania legislature has commanded that an individual shall not "operate . . . a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving . . . the vehicle" upon a highway of the Commonwealth.  75 Pa.C.S.A. § 3802(a)(1).

Admittedly, Mr. Huttenlocher did not directly testify that, in his opinion, Mazzagetti was incapable of safely driving due to intoxication.  Nevertheless, the "Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence." ***Commonwealth v. Williams***, 176 A.3d 298, 306 (Pa. Super. 2017).  As explained below, the record reflects, through wholly circumstantial evidence, that Mr. Huttenlocher held such an opinion after he observed Mazzagetti's appearance and actions on the morning of May 22, 2020.

First, based on his observations of Mazzagetti, Mr. Huttenlocher required him to take a urinalysis if Mazzagetti wished to retain his employment at the nursing home.  When Mazzagetti refused to take the test, Mr. Huttenlocher ordered him off the premise and terminated him soon thereafter.

Second, and even more tellingly, Mr. Huttenlocher offered to find Mazzagetti a ride home and warned Mazzagetti that, if he drove himself, Mr. Huttenlocher would call the police.  This was clear circumstantial evidence that Mr. Huttenlocher was of the opinion that Mazzagetti was incapable of safely driving himself home.  Otherwise, there was no rational basis for Mr.

Huttenlocher to make such an offer to an employee that he believed was too intoxicated to work that morning. Mazzagetti declined the offer of a ride and immediately drove his van on the highways of the Commonwealth to reach his home.

Therefore, there was circumstantial evidence from which the trial court reasonably concluded that Mazzagetti was incapable of safely driving when he left the nursing home in his van and drove home. Indeed, as the learned Judge Timothy Krieger opined from the bench at the conclusion of Mazzagetti's trial:

> it's worth putting [this case] in the context - - this was May of 2020. We all remember the misery of May of 2020 [at the height of the COVID-19 pandemic], particularly in facilities like where Mazzagetti was working . . . they were desperate for employees . . . [I]t's difficult for the [trial] court to believe that this facility would do anything to lose an employee. And . . . Mr. Huttenlocher . . . was credible. So, we have testimony the [trial] court can believe that Mazzagetti was at work that day and, at least [to] Mr. Huttenlocher, appeared to be intoxicated, and he was willing to say, "Submit to this test, or you're terminated." [Mr. Huttenlocher] also . . . saw Mazzagetti get in the vehicle and drive off.
>
> We have testimony from two troopers that found, 40 minutes to an hour . . . later, that Mazzagetti was in his vehicle with . . . a half-drank bottle of Tequilla or alcohol . . . and that his speech was slurred.
>
> [A]t both ends of this incident, we have [slurred] speech and stumbling, and we have indicia of alcohol consumption that convinces [the trial] court that there was significant impairment at both ends. It's hard to come to any other conclusion, except that [Mazzagetti] was intoxicated while he drove his vehicle. It's clear he drove the vehicle . . . from his place of employment to his residence.

Based on that testimony . . . it's clear that [Mazzagetti] was impaired, and he was impaired to the point where he was unable to drive safely.

N.T., 8/21/23, at 56-57.

We agree with the above, well-reasoned analysis of the trial court and adopt it as our own. The Commonwealth offered sufficient evidence to prove beyond a reasonable doubt that Mazzagetti was intoxicated to a degree that rendered him incapable of safely driving when he departed the nursing home. Hence, we agree with the trial court; the evidence sufficiently proved that Mazzagetti violated 75 Pa.C.S.A. § 3802(a)(1) as he drove from the nursing home.

Accordingly, we dismiss Mazzagetti's claim of error as meritless.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 05/30/2024

- 6 -