J-A01016-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| UBALDO VERGARA-DOMINGUEZ | : | |
| | : | |
| Appellant | : | No. 2414 EDA 2024 |

Appeal from the Judgment of Sentence Entered August 12, 2024
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0000103-2021

BEFORE: DUBOW, J., KUNSELMAN, J., and SULLIVAN, J.

MEMORANDUM BY KUNSELMAN, J.: **FILED APRIL 14, 2026**

Ubaldo Vergara-Dominguez appeals from the judgment of sentence imposed after a jury convicted him of two counts of statutory sexual assault, two counts of involuntary deviate sexual intercourse, two counts of aggravated indecent assault, one count of trafficking of persons, and one count of corruption of minors.[1] We affirm.

The evidence presented at Vergara-Dominguez's trial may be summarized a follows. G.M. testified that she met Vergara-Dominguez when she was at a ranch in Mexico were Vergara-Dominguez was on vacation. She testified that she knew he was 37 years old and that she told him she was 14. According to G.M., Vergara-Dominguez told her that she and her cousin should come to the United States to work because wages were high.

_____

[1] 18 Pa.C.S.A. §§ 3122.1, 3123(a)(7), 3125(a)(8), 3002, and 6301(a)(1), respectively.

G.M. testified that she arrived in the U.S. when she was 15 years old. She stated that when she arrived at Vergara-Dominguez's home in Coatesville, PA, he had her drink alcohol and have sex with him. G.M. testified that, even though she did not want to have sex with Vergara-Dominguez, he would have sex with her all the time. She stated that they engaged in vaginal and oral sex and that Vergara-Dominguez was physically abusive.

G.M. further testified that she became pregnant by Vergara-Dominguez when she was 15 years old and her first child was born on October 27, 2008. According to G.M., Vergara-Dominguez continued his sexual relationship with her throughout the years and, as a result, they had three children together.

She also testified that Vergara-Dominguez made her an identification card to present when she went for pregnancy checkups. This identification card falsely indicated that G.M.'s birth year was 1989 rather than her actual birth year of 1992, so it appeared that she was 18 years old. The identification card also had an abbreviated version of her name.

G.M. testified that Vergara-Dominguez had a daughter that was born on March 19, 1992. She stated that Vergara-Dominguez commented on the fact that G.M.'s birth date, March 9, 1992, and his daughter's birthday were very similar. According to G.M., Vergara-Dominguez "felt like he was having sex with his daughter." N.T., 10/25/23, at 68.

G.M. testified that she spoke with police in 2019 and recounted all of the details to which she testified. She also stated that she spoke with an

immigration attorney about a U visa and a T visa.[2]  On her T visa application, she wrote that she had been trafficked.  She then obtained a T visa.

On cross-examination, G.M. admitted that she mispresented her date of birth to gain admittance to the hospital.  She further acknowledged that her medical records from 2008 through 2014 would reflect that she was born in 1989.

Vergara-Dominguez testified in his own defense.  He stated that, in 2007 or 2008, G.M. came to Coatesville and arrived at his home along with her cousin, who was looking for her boyfriend.  Vergara-Dominguez stated that, at that time, G.M.'s physical appearance was about 20 years old.  He also testified that he saw G.M.'s Mexican driver's license because she was driving at that time and the date of birth on the license was March 9, 1989.

_____

[2] The parties entered into a several stipulations that defense counsel read to the jury.  **See** N.T., 10/25/23, at 102-03. A U Visa "is set aside for victims of certain crimes who have suffered mental or physical abuse and are helpful to law enforcement or government officials in the investigation or prosecution of criminal activity.  One of those qualifying crimes is trafficking in persons."

A T Visa "is a temporary immigration benefit that enables certain victims of a severe form of trafficking in persons to remain in the United States for an initial period of four years if they have complied with any reasonable request for assistance from law enforcement in the detection, investigation, prosecution of human trafficking or qualify for an exemption or exception." "T nonimmigrants are eligible for employment authorization and certain federal and state benefits and services.  T nonimmigrants who qualify may also be able to adjust their status and become lawful permanent residents (obtain a Green card).

Vergara-Dominguez admitted that he had vaginal intercourse with G.M., but denied having oral sex or digitally penetrating G.M. He testified that he never believed G.M. was under 16 years old when he was having sexual relations with her.

Finally, in rebuttal, the Commonwealth called Rosemary Dominguez, Vergara-Dominguez's daughter from a previous marriage. She testified that her date of birth is March 29, 1992. Now 31 years of age, Ms. Dominguez further testified that she last saw Vergara-Dominguez when she was 18 years old. *See* N.T., 10/26/23, at 6. She stated that when she met G.M., Vergara-Dominguez told her that G.M.'s birthday was three days after hers and he believed that G.M. was a year older than she was. According to Ms. Dominguez, Vergara-Dominguez told her they would hopefully "hit it off" because they were close in age. *Id.* at 7.

On October 26, 2023, the jury found Vergara-Dominguez guilty of the aforementioned crimes. On June 6, 2024, the trial court sentenced him to an aggregate term of 34 to 68 years in prison. Thereafter, the court granted Vergara-Dominguez's motion for sentence modification, and, on August 9, 2024, the court reduced his sentence to an aggregate term of 25 to 50 years of imprisonment, followed by three years of reentry probation. On August 12, 2024, the court filed an amended sentencing order that corrected a clerical mistake. This appeal followed. Both Vergara-Dominguez and the trial court complied with Appellate Rule 1925.

Vergara-Dominguez raises the following issue:

> Where defense of mistake of age was raised, did the trial court err in failing to give the mistake of age instruction together with the [instruction about] uncorroborated testimony of the complaining witness being sufficient to sustain a conviction?

Vergara-Dominguez's Brief at 2 (excess capitalization omitted; reworded for clarity).

Our standard of review in assessing whether a trial court erred in fashioning its instructions to the jury is well settled.

> In reviewing a jury charge, we determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. We must view the charge as a whole; the trial court is free to use its own form of expression in creating the charge. A trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration.

*Commonwealth v. Williams*, 176 A.3d 298, 314 (Pa. Super. 2017) (quotation marks and internal citations omitted). It is also well settled that "[a] jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue." *Commonwealth v. Sandusky*, 77 A.3d 663, 667 (Pa. Super. 2013) (citation omitted). Moreover, there is no right to have any particular form of instruction given; the only requirement is that the charge "clearly and accurately characterize relevant law." *Commonwealth v. Akhmedov*, 216 A.3d 307, 321 (Pa. Super. 2019) (citation omitted).

Here, the trial court summarized its charging conference as follows:

> In the present case, the trial court conducted an on the record charging conference with the defense attorney and

- 5 -

prosecuting attorney. The court reviewed its standard jury instructions and points for charge. The court indicated to both counsel that it would instruct the jury at each relevant charge that [Vergara-Dominguez] raised the issue of "his belief as to her age." No objection was raised by defense at the time of the charging conference. The only objection raised by defense counsel in the charging conference was to the court's denial of defense's request to have a prompt complaint instruction read. Defense did raise [the] issue at the end of the jury charge regarding the testimony of the complaining witness alone is sufficient for a finding of guilt, and that an exception to that is the affirmative defense [of mistake of age]. The trial court properly denied this request[,] noting that "the charge was read to cover every point."

Trial Court Opinion, 3/25/25, at 4 (citations to record omitted). In response, defense counsel noted his objection for the record.[3] The court then instructed the jury in conformity with its presentation at the charging conference.

In the first issue in his Rule 1925(b) statement, Vergara-Dominguez claimed that "[b]ecause mistake of age was asserted, the jury should have been instructed that they must consider not only the uncorroborated testimony of the complaining witness standing alone, but also any evidence regarding whether [Vergara-Dominguez] reasonably believed the complaining witness was above the critical age." Trial Court Opinion, 3/25/25, at 3.[4]

---

[3] Thus, we reject the Commonwealth's assertion that Vergara-Dominguez waived his issue on appeal because he only objected to the failure to give the prompt complaint instruction at the time of the charging conference. *See* Commonwealth's Brief at 8-11.

[4] Vergara-Dominguez also asserted in his Rule 1925(b) statement that the trial court erred in failing to give a prompt complaint instruction. He has not, however, pursued this claim on appeal.

Here, there is no indication that the jury did not consider all the evidence given how the trial court chose to charge the jury. As stated by the trial court:

> The court's instruction in the present case, when read as a whole, adequately and accurately reflected the law and [was] sufficient to guide the jury in its deliberations. [Vergara-Dominguez's] first issue is without merit, as the trial court properly instructed the jury on multiple occasions as to [Vergara-Dominguez's] affirmative defense, and therefore the jury's verdict should be affirmed.

*Id.* at 6-7.

In arguing the trial court erred, Vergara-Dominguez asserts that "when the mistake of age defense is properly raised by the defendant, the jury instructions on the uncorroborated testimony of the victim should be qualified by the mistake of age instruction." Vergara-Dominguez's Brief at 18. Vergara-Dominguez further asserts, "[i]f a judge instructs a jury incorrectly with regard to the interplay between these two principles, which are specific to sexual offenses, it can undermine the jury's deliberations, resulting in an unjust verdict." *Id.* According to Vergara-Dominguez, "the uncorroborated testimony instruction read alone and not qualified by the mistake of age instruction was error." *Id.*

We disagree. Vergara-Dominguez cites no authority, case law or otherwise, requiring this qualification to the uncorroborated complainant's testimony instruction or establishing that the trial court could not reference the mistake of age defense when charging on each sex offense. The law does not require jury instructions to be given in any particular order. As noted

above, we review the court's jury instruction as a whole. **Williams**, **supra**. When considered in this manner, no error occurred in the jury's charge. We therefore reject Vergara-Dominguez's claim on appeal, and affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/14/2026